# BIBB *v.* ALLEN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF ALABAMA.

No. 269. Argued April 28, 1893. — Decided May 10, 1893.

Motions to suppress depositions for irregularities should be made before the case is called for trial, so that opportunity may be afforded to correct the defects or to retake the testimony.

A variance between the notice and the commission to take depositions such as misspelling the commissioner's name in the latter, affords no valid ground for the suppression of the depositions.

Where a principal sends an order to a broker doing business in an established market or trade, for a deal in that trade, he thereby confers upon the broker authority to deal according to any well-settled usage in such trade or market, especially when such usage is known to the principal, and is fair in itself, and does not change any essential particular of the contract between the principal and the broker, or involve any departure from the principal's instructions; provided the transaction for which the broker is employed be lawful in character and is not violative of good morals or public policy.

In an action by A., a cotton broker doing business on the New York Cotton Exchange, against B. for moneys claimed to be due for advances and commissions on account of various transactions for B. in selling as his agent cotton for future delivery, it was not error to admit in evidence the statutes of New York under which the said Cotton Exchange was organized, together with the rules and regulations of that body in pursuance of which the transactions in question were conducted, it appearing that B. knew that A. when acting as his agent, would transact the business through that Exchange, and in accordance with its rules and regulations.

By the agreed use of Shepperson's code, which provided that " unless otherwise stated as agreed, it is distinctly understood that all orders sent by this chapter are to be subject in every respect to the by-laws and rules of the market where executed," and further, that " with every telegram sent by this table the following sentence will be read as a part of the message, viz., this sale has been made subject to all the by-laws and rules of our cotton exchange in reference to contracts for the future delivery of cotton," the rules and regulations which were authorized to be made by the statutes of New York, under which the exchange was incorporated, entered into and formed a part of the transactions in this case.

Contracts for the future delivery of personal property which the vendor does not own or possess, but expects to obtain by purchase or otherwise,

are valid, if at the time of making the contract an actual transfer of the property is contemplated by at least one of the parties to the transaction.

Slip contracts, in the form prescribed by the rules and regulations of the Cotton Exchange, constitute bought and sold notes, which, taken together, as they should be, afford a sufficient memorandum in writing between the brokers, or their principal, and the vendee of the cotton to satisfy the requirements of the statute of frauds.

The defence of the statute of frauds cannot be set up against an executed contract.

The employment of a broker to sell property for future delivery implies not only an undertaking to indemnify the broker in respect to the execution of his agency, but also implies a promise on the part of the principal to repay or reimburse him for such losses or expenditures as may become necessary or result from the performance of the agency.

B. and H. being sued as partners, and it appearing from the proof that H. was not a partner but merely a clerk, no objection to the misjoinder having been made by either of the defendants, judgment for the whole amount was properly entered against B., a substantial cause of action having been established.

The case of *Irwin* v. *Williar*, 110 U. S. 449, distinguished.

THE defendants in error, citizens of the States of New York and Tennessee, and doing business in the city of New York as brokers, commission merchants, and cotton factors, under the firm name and style of Richard H. Allen & Company, brought this action of assumpsit, in February, 1887, against the plaintiff in error and one Hopkins, citizens of Alabama, as partners under the name of B. S. Bibb & Company, to recover the sum of $20,023.50 with interest, which was claimed as commissions for services rendered, and money paid and advanced by them for, and at the request of, the defendants in selling, for their account and as their agents, cotton for future delivery according to the rules and regulations of the New York Cotton Exchange, in the city of New York.

The declaration or complaint was in the usual form, and contained but a single count for work and labor done, services rendered, and money paid out and expended by the plaintiffs during the month of December, 1886, at the instance and request of the defendants, to the amount of $20,023.50, which, with interest thereon, was averred to be past due and unpaid. The defendants answered separately. Neither of them de-

nied the existence of a partnership between them, but both defended upon the merits. The answer of the defendant Hopkins consisted of two pleas: (1) non-assumpsit; (2) that the plaintiffs did not do the work and labor or pay the money mentioned in the complaint at his instance or request. The defendant Bibb filed an answer containing five pleas, the first two of which were the same as those interposed by Hopkins. His third plea was a general denial of the allegations of the complaint, while the fourth and fifth averred that the work and labor performed by the plaintiffs, as set forth in their declaration, was the making of eleven wagers for him on the price of cotton, and that the money paid by the plaintiffs for him was in the settlement of the losses of those wagers, and in each of these pleas the statute of the State of New York against wagers, bets, and gambling transactions was set out.

After issue joined on the pleas, the defendant Bibb, by leave of the court, filed a sixth plea, setting up that on November 10, 1886, the plaintiffs, as special agents for him, sold 10,000 bales of cotton by various contracts, as a speculation, and for future delivery in New York, and averred that the plaintiffs by their gross negligence and unskilfulness made said contracts in such forms that all of said contracts, under the laws of the State of New York, were unlawful and void, and not binding on any one of the parties to said contracts, or either of them, in this, that in and by the statute law of New York, in force at the time said contracts were made, it is declared that "every contract for the sale of any goods, chattels, or things in action, for the price of $50 or more, shall be void unless (1) a note or memorandum of such contract be made in writing, and be subscribed by the parties to be charged thereby; or (2) unless the buyer shall accept and receive a part of such goods, or the evidences or some of them of such things in action; or (3) unless the buyer shall at the time pay some part of the purchase money." It was further averred that no note or memorandum of any of the contracts of sale, made by plaintiffs for defendant, was made in writing and signed by the parties to be charged thereby, that no part of said

cotton was accepted by the buyer, and no part of the purchase money was paid therefor. The plea further alleged that on December 30, 1886, the plaintiffs, without the request of the defendants, but voluntarily, settled said void contracts, and paid to the buyers of the cotton under such contracts large sums of money, and concluded with the averment that, without this, the plaintiffs never did any work, or paid any money for the defendant.

Upon the trial of the cause before the court and a jury, the court, after stating to the jury that there was no evidence in the case upon which a verdict for the defendant Bibb could rest, on the ground that the contract sued on was a gambling contract and therefore void, further instructed them that "the defendant Bibb did not in his testimony deny the correctness of the account sued on, but did say that the plaintiffs were liable to him for their failure to execute his subsequent orders to them to sell, for future delivery, some twenty-two thousand bales of cotton, as shown in the evidence in this cause; but there being no claims by him in this suit against the plaintiffs on account of such failure to execute such orders, 'I charge you that if you believe the evidence you should find a verdict for the plaintiffs against the defendant Bibb for the amount of the account and interest.'" The court further charged the jury: "This case is made out as to defendant B. S. Bibb, and it is your duty to find a verdict against him for the account sued on and interest."

To the instruction that if they believed the evidence they should find a verdict for the plaintiffs against him for the account sued on and interest, the defendant Bibb excepted. The jury returned the following verdict: "We the jury, find for the plaintiffs against the defendant Bibb, and assess the damages at $22,476.38, and we find for the defendant T. H. Hopkins on the ground that he was not a partner of B. S. Bibb." Upon a return of this verdict the defendant Bibb objected to a judgment being rendered against him thereon, for the reason that the complaint and pleadings and said verdict did not authorize a judgment against him. No other ground of objection was stated or interposed. The court over-

ruled his objection, and entered judgment against him for the amount found by the jury, to which Bibb excepted. The present writ of error was prosecuted by him to reverse that judgment.

*Mr. E. W. Pettus,* (with whom was *Mr. George H. Craig* on the brief,) for plaintiffs in error.

The deposition of Richard H. Allen should have been suppressed. It was attempted to be taken according to the laws of Alabama instead of pursuant to the statutes of the. United States. The alleged commission was issued to George H. Carey instead of to George H. Corey, the commissioner named in the notice served upon counsel for defendants. For these and other reasons a motion to suppress the deposition was made "before the trial commenced."

Whether the New York Cotton Exchange was incorporated or was a mere voluntary association was immaterial to any question in this case. The admission in evidence of the statutes of New York under which it was organized, together with the rules and regulations pursuant to which the business of the Exchange was conducted was therefore error. Nor did it matter that the transactions in question were conducted in accordance with the then prevailing course of business of the Exchange. The attempt was to prove a custom or course of business of a merely temporary character. *United States* v. *Buchanan,* 8 How. 82. Custom or course of business cannot change the law, nor make a contract valid, which the statute declares void.

The "slip contracts" admitted in evidence could not and do not constitute a sufficient note or memorandum in writing to satisfy the statute of frauds of the State of New York. They do not contain in themselves the whole of the contract. *Wright* v. *Weeks,* 25 N. Y. 153 ; *Williams* v. *Morris,* 95 U. S. 444, 454, 456. The contract to be valid need not necessarily be contained in one writing, but when contained in more than one writing such writings cannot be connected by parol evi-

dence merely. *Wright* v. *Weeks*, 25 N. Y., *supra; Carter* v. *Shorter*, 57 Alabama, 253; *Carroll* v. *Powell*, 48 Alabama, 298; *Adams* v. *McMillan*, 7 Porter, (Ala.,) 73. Both parties must be named in the written contract. An agent is entitled to his commissions only on due performance of all duties of his agency. These contracts being void and not enforceable in the courts of the State where made plaintiffs are not entitled to recover from defendants.

If Allen & Co. had made these sales for Bibb in legal form, and had then paid the losses for Bibb the law would have implied a promise on Bibb's part to pay Allen & Co. But the contracts were void under the statutes of frauds of New York. Allen & Co. were not legally bound to pay the losses, hence if they paid the money it was without actual request on part of Bibb, and without any implied promise on his part to repay them.

This declaration was against Bibb and Hopkins as partners, under the style of Bibb & Company; the verdict is against Bibb alone. It is conclusively established by the verdict that there was no such contract made by the *partnership* as alleged in the complaint, hence there is no cause of action which will serve to support the recovery adjudged. *Walker* v. *Mobile Marine Dock and Ins. Co.*, 31 Alabama, 529, 531.

*Mr. A. A. Wiley* for defendants in error.

MR. JUSTICE JACKSON, after stating the case, delivered the opinion of the court:

The plaintiff in error has filed nineteen assignments of error, which may be grouped under five heads or propositions, viz.: (1) that the court erred in overruling the motion to suppress the deposition of the witness Richard H. Allen; (2) that the court erred in admitting as evidence the statutes of New York, under which the New York Cotton Exchange was incorporated, and the rules and regulations of the Exchange, together with the parol testimony that the transactions in

question between the parties were conducted in accordance with those rules and regulations; (3) that the contracts for the sale of cotton for future delivery were gambling contracts within the meaning of the New York statute against wagers, bets, etc.; (4) that said contracts were invalid under the statute of frauds of the State of New York; and (5) that under the pleadings no judgment could be rendered against the defendant Bibb alone.

The questions thus presented may be properly considered in the order stated, under the facts disclosed by the bill of exceptions. The motion to suppress the deposition of the witness Richard H. Allen was based on the ground that no commission was issued out of the court, or by the clerk thereof, authorizing George H. Corey, as commissioner, to take the deposition; and, secondly, that neither of the defendants or their attorneys received any notice of the time and place of taking the deposition, or of the residence of either the witness or the commissioner by whom the deposition was taken. These objections to the deposition are clearly not well taken, for several reasons: It is shown by the record that on April 7, 1888, a notice was issued and served on the defendants that plaintiffs would take the deposition of the witness Allen, whose place of business was stated in the notice to be 31 and 33 Broad Street, New York city; and that George H. Corey, whose place of business was 60 Wall Street, in that city, would be suggested as commissioner to take such deposition; and that a copy of the interrogatories to be propounded to the witness was attached to the notice. It further appears that at that time the defendant Bibb objected to a commission being issued to take the deposition on the interrogatories to be propounded by the plaintiffs, basing his objection on the ground that the notice did not give the residence of the witness and of the commissioner, and on the further ground that no sufficient affidavit for the taking of the deposition had been filed, which objections were manifestly insufficient, inasmuch as the place of business of both the witness and the commissioner was stated, and an affidavit was filed by the attorney for the plaintiffs which showed

proper ground for taking the deposition. Without invoking the action of the court upon these objections, the defendant Bibb filed cross-interrogatories to those propounded by the plaintiffs, and on April 18, 1888, a commission was regularly issued to said George H. Corey, as commissioner, to take the deposition on the interrogatories and cross-interrogatories filed, in accordance with the terms of the notice served upon the defendants. The record further shows that the deposition was actually taken in pursuance of the commission thus issued, and was in all respects regular and in proper legal form. The clerk of the court in issuing the commission addressed it, however, to George H. Carey, Esq., 60 Wall Street, New York city, instead of to George H. Corey, but that was purely a clerical mistake in making out the commission, and in no way misled the defendant or affected his rights. He had been notified of the place of taking the deposition, and been given the true name of the commissioner, and the slight variance in the commission which issued was not material, and furnished no valid ground for the suppression of the deposition. *Keene* v. *Meade*, 3 Pet. 1, 6.

But, aside from this, the motion to suppress the deposition came too late. As already said, the commission to take the deposition of said Allen was issued April 18, 1888. The deposition was taken before the proper commissioner on May 17, 1888, and, after transmission to the clerk of the court, was by him published, under a general order of the court, May 29, 1888. The May term of the court was then in session, and continued in session until July 8, 1888. The November term commenced on the first Monday of that month. During all that time the defendant Bibb made no objection to the deposition, and gave no notice that he would move to suppress it, but waited until January 10, 1889, the day set for the trial of the cause, when, after a motion for a continuance, then made, had been overruled, he, for the first time, moved to suppress the deposition. If the deposition was in any respect open to irregularities, the motion to suppress it, under the circumstances, came too late. Such motions should be made before the case is called for trial, so as to afford opportunity to retake

the testimony or correct defects in the taking of the deposition. *Howard* v. *Stillwell & Bierce Mfg. Co.*, 139 U. S. 199, 205, and cases cited. The same rule of practice prevails in Alabama. *De Vendal* v. *Malone*, 25 Alabama, 272, 278; *Birmingham Union Ry. Co.* v. *Alexander*, 93 Alabama, 133. This assignment of error is, therefore, without merit.

The next assignment of error relied on is in the action of the court admitting in evidence the statutes of New York under which the New York Cotton Exchange was organized, together with the rules and regulations of that body under and in pursuance of which the transactions in question were conducted. This evidence was clearly competent and relevant, because the contracts entered into between Bibb & Company and the plaintiffs contemplated that the business which the plaintiffs would transact for their principals would be under, and in accordance with, the rules and regulations of the New York Cotton Exchange. It was proper, therefore, to show that this Cotton Exchange was a lawful body, organized for lawful business purposes, and had power to make such rules and regulations as might be deemed necessary and proper to carry out the purpose of its organization. It is clearly shown that B. S. Bibb & Company knew that the plaintiffs did business as cotton factors in that Exchange, and in accordance with those rules and regulations, and that, in acting as their agents in the sale of cotton for future delivery, they would transact the business through that Exchange, and in accordance with its rules and regulations. It was, therefore, germane to the issues in the case, and was both competent and relevant to prove that the contract between the parties had been carried out on the part of the plaintiffs in the mode and according to the methods contemplated by the parties. *Peabody* v. *Speyers*, 56 N. Y. 230, 236; *Nickalls* v. *Merry*, L. R. 7 H. L. 530, 542.

It is settled by the weight of authority that where a principal sends an order to a broker engaged in an established market or trade, for a deal in that trade, he confers authority upon the broker to deal according to any well-established usage in such market or trade, especially when such usage is known

to the principal, and is fair in itself, and does not change in any essential particular the contract between the principal and agent, or involves no departure from the instructions of the principal; provided, the transaction for which the broker is employed is legal in its character, and does not violate any rule of law, good morals, or public policy. We are of opinion, therefore, that the assignment of error based upon the admission of this testimony is not well taken.

Upon the third assignment of error, which presents the question whether the transactions in which the parties were engaged were illegal, because they were wagering contracts under the New York statute against wagers, bets, etc., the evidence in the case clearly fails to make out such a defence. In entering into their arrangement, it is shown by the correspondence and by other testimony in the case that there was no agreement or understanding between the plaintiffs and defendants that the cotton sold for future delivery was not in fact to be actually delivered. In their correspondence as to the terms on which the agency was to be undertaken the plaintiffs were distinctly informed that the defendants did a large business for the best and most reliable people of their locality; that they would hold themselves personally responsible for all orders sent, and hold their correspondents responsible for all orders executed as to margins; that they handled, sometimes, from 3000 to 5000 bales of cotton a day, and that their customers dealt in orders for from 500 to 1000 bales at a time, and were entirely responsible. It was also testified by both the plaintiffs and defendant Bibb that there was no understanding or agreement, either express or implied, between them at the time of entering upon the transactions or during their progress, that the cotton sold for account of the principals was not to be delivered at the time stipulated in the contracts of sale made for their account. It is not questioned that if the transactions in which the parties are engaged are illegal, the agent cannot recover either commissions for services rendered therein, or for advances and disbursements by him for his principal, (Story on Agency, §§ 330, 344, and authorities cited,) the reason for this rule being that in such illegal trans-

actions of which the agent has knowledge he is regarded as *particeps criminis,* which precludes him from the recovery of either commissions or advances. *Irwin* v. *Williar,* 110 U. S. 499, 510.

But the facts of this case do not bring the transactions in question within the operation of that principle, for the evidence set out in the bill of exceptions fails to show that either party to the transactions intended the same as wagering or gambling speculations. On the contrary, the undisputed testimony establishes that the sales were not wagers, but that the cotton was to be actually delivered at the time agreed upon. Bibb's own statement of the transactions does not disclose the fact that they were intended, even on his part, as gambling or wagering speculations. He certainly never disclosed to the plaintiffs, as his brokers, either in their correspondence or in their verbal communications, that he did not intend to deliver the cotton sold through them for future delivery. In addition to this, it is shown that the rules and regulations of the New York Cotton Exchange recognized no contracts except for the sale and purchase of cotton to be actually delivered. These rules and regulations impose upon the seller the obligation to deliver the cotton sold, and upon the purchaser the obligation to receive it, except in certain specified cases, which have no application to the present case.

These rules, which were authorized to be made by the statute of the State of New York, under which the Exchange was incorporated, enter into and form part of the contracts of sale in this case. The defendants in one of their earliest communications to the plaintiffs informed them that they would use in their telegraphic correspondence what was known as Shepperson's code, which provided that "unless otherwise stated as agreed, it is distinctly understood that all orders sent by this chapter are to be subject in every respect to the by-laws and rules of the market where executed;" and further, that "with every telegram sent by this table the following sentence will be read as a part of the message, viz., this sale has been made subject to all the by-laws and rules of

· our cotton exchange in reference to contracts for the future delivery of cotton."

It is well settled that contracts for the future delivery of merchandise or tangible property are not void, whether such property is in existence in the hands of the seller, or to be subsequently acquired. 2 Kent's Com. 468, and authorities cited in notes; Benjamin on Sales, Am. ed. §§ 81, 82. It is further well settled that the burden of proof is upon the party who seeks to impeach such transactions by showing affirmatively their illegality. *Roundtree* v. *Smith,* 108 U. S. 269; *Dykers* v. *Townsend,* 24 N. Y. 57; *Irwin* v. *Williar,* 110 U. S. 499, 507, 508. In this latter case the trial court charged the jury that "the burden of showing that the parties were carrying on a wagering business, and were not engaged in legitimate trade or speculation, rests upon the defendant. On their face these transactions are legal, and the law does not, in the absence of proof, presume that the parties are gambling. "A person may make a contract for the sale of personal property for future delivery which he has not got. Merchants and traders often do this. A contract for the sale of personal property which the vendor does not own or possess, but expects to obtain by purchase or otherwise, is binding if an actual transfer of property is contemplated. A transaction which on its face is legitimate cannot be held void as a wagering contract by showing that one party only so understood and meant it to be. The proof must go further, and show that this understanding was mutual — that both parties so understood the transaction. If, however, at the time of entering into a contract for a sale of personal property for future delivery it be contemplated by both parties that at the time fixed for delivery the purchaser shall merely receive or pay the difference between the contract and the market price, the transaction is a wager, and nothing more. . . . It is not sufficient for the defendant to prove that Irwin & Davis never understood that they were to deliver wheat in fulfilment of the sales made for them by the plaintiffs. The presumption is, that the plaintiffs expected Irwin & Davis to execute their contracts, expected them to

deliver the amount of grain sold, and before you can find that the sales were gambling transactions and void, you must find from the proof that the plaintiffs knew or had reason to believe that Irwin & Davis contemplated nothing but a wagering transaction, and acted for them accordingly. If the plaintiffs made sales of wheat for Irwin & Davis for future delivery, understanding that these contracts would be filled by the delivery of grain at the time agreed upon, Irwin & Davis were liable to the plaintiffs, even though they meant to gamble, and nothing more."

This court approved that charge as a correct statement of the law upon the subject of what constitutes a wagering contract. It is directly in point here, for the evidence fails to show not only that Bibb & Company intended it as a wagering contract, but it fails to show also that the plaintiffs so understood it. The testimony establishes that the plaintiffs did not, in fact, so understand it.

It further appears that in the memorandum, or " slip contracts " of sale actually made by the plaintiffs for the account of Bibb & Company, the sales were described as made " subject to the rules and regulations of the New York Cotton Exchange." Under these circumstances we are of opinion that the testimony fails to establish that the contracts in question were wagering transactions, and therefore void. The testimony is so clear to the contrary that the court below, under the settled rules of this court, was certainly justifiable in not submitting that question to the jury ; for if it had been submitted, and the jury had found that the contracts were wagers, it would have been the duty of the court to set aside their verdict. There is no merit in this assignment of error.

It is next urged, on behalf of the plaintiff in error, that the contracts for the sale of the cotton were void under the statute of frauds of the State of New York, because there was no sufficient note or memorandum in writing of the transactions, signed by the parties to be charged thereby. We are of opinion that this contention cannot be sustained under the facts of the case.

After agreeing upon the terms in which the business should be transacted, and the use of Shepperson's code of cipher, B. S. Bibb & Company, on November 9, 10, and 11, 1886, telegraphed orders to the plaintiffs to sell for them in the aggregate 10,000 bales of cotton for January and February delivery. These despatches were sent according to the form of Shepperson's code, and directed the sales for delivery for account of designated names such as "Albert," "Alfred," "Alexander," "Amanda," "Andrew," "Winston," etc., which names were intended, and understood, to represent the firm name of B. S. Bibb & Company. Thus, under date of November 9, 1886, B. S. Bibb & Company telegraphed to plaintiffs : "If bureau report is considered favorable to-morrow sell for January delivery 1000 bales cotton account Albert. Sell for February delivery 1000 bales account Alfred. Sell for January delivery 1000 bales account Alexander. Sell for January delivery 500 bales cotton account Andrew. Act promptly if favorable." So under date of November 10, 1886, they telegraphed : "If market opens as high or higher to-morrow sell for January delivery 1500 bales cotton account Winston. Keep us thoroughly posted."

These despatches, as well as others of a similar character of later dates, meant "sell for January or February delivery the designated number of bales on account of B. S. Bibb & Company," and had attached to them, by the express terms of Shepperson's code, the understanding and agreement, already quoted, that the orders were to be subject in every respect to the by-laws and rules of the Cotton Exchange of New York, with the additional terms read into the telegrams, and as a part thereof, the stipulation that the sales were to be subject to said by-laws and rules in reference to the future delivery of cotton.

The plaintiffs executed these orders promptly as they were received. In the execution of the orders they made what are called "slip contracts" in duplicate, one copy signed by the purchaser being delivered to the plaintiffs, and the other, signed by the plaintiffs as brokers, being given to the purchaser. There were nineteen sales of cotton to various per-

sons named in these "slip contracts," which were in the following form :

"New York, Nov. 10, 1886.

"B 10, ac. Albert.
 10 " Alexander.
 5 " Andrew.
Seller, —— ——.
Buyer, Zerega & White.
On contract, subject to rules and regulations
 of New York Cotton Exchange.
Twenty-five hundred bales cotton.
Jan. 1 delivery.
Price 8.99.
× Per Z. & White, seventy-five."

These contracts differed only in date, in the name of the purchaser, in the quantity of cotton sold, and the price thereof. As each sale was thus made, it was reported promptly by the plaintiffs to the defendants, both by letter and by telegram, giving price, and stating that the orders to sell were executed. So that the defendants were kept accurately advised of each transaction made in pursuance of their order.

In addition to the "slip contracts," in the form described above, delivered by the plaintiffs to the purchasers of the cotton sold, and received by them from the buyers of cotton, the sales were entered upon the books of the plaintiffs in conformity with such contracts. These "slip contracts" show upon their face that the purchaser named therein bought cotton, sold for account of the name adopted to represent B. S. Bibb & Company; they gave the price, and the number of bales, and the time of delivery; they were in the form prescribed by the rules and regulations of the Cotton Exchange, and constitute bought and sold notes, which, taken together, as they should be, constitute a sufficient memorandum in writing of the contract between the brokers, or their principal, and the purchasers of the cotton, to meet the re-

quirements of the statute of frauds. *Peabody* v. *Speyers*, 56 N. Y. 230, 236, 237; *Newberry* v. *Wall*, 84 N. Y. 576, 580; *Butler* v. *Thompson*, 92 U. S. 412; *Beckwith* v. *Talbot*, 95 U. S. 289; *Bayne* v. *Wiggins*, 139 U. S. 210; *Ryan* v. *United States*, 136 U. S. 68, 83.

In this latter case this court, speaking by Mr. Justice Harlan, said: " The principle is well established that a complete contract binding under the statute of frauds may be gathered from letters, writings and telegrams between the parties relating to the subject matter of the contract, and so connected with each other that they may be fairly said to constitute one paper relating to the contract." So in Benjamin on Sales, (Am. ed. § 296,) after a review of the authorities, both English and American, it is stated: " The bought and sold notes, when they correspond and state all of the terms of the bargain, are complete and sufficient evidence to satisfy the statute; even though there be no entry in the broker's book, or, what is equivalent, only an unsigned entry." *Goom* v. *Aflalo*, 6 B. &. C. 117; *Sievewright* v. *Archibald*, 17 Q. B. 104, 115; *Thompson* v. *Gardiner*, 1 C. P. D. 777. Such, too, is the rule in New York, as shown by the earlier cases of *Peltier* v. *Collins*, 3 Wend. 459; *Davis* v. *Shields*, 26 Wend. 341.

The bought and sold notes in question in this case, called " slip contracts," when read in the light of the rules and regulations of the Cotton Exchange, and considered in connection with the letters and telegrams between the parties, constitute a sufficient note or memorandum in writing of the transactions to satisfy the requirements of the statute of frauds. It is no valid objection to these " slip contracts," executed in duplicate, that the sales purported to be made on account of " Albert," " Alfred," " Alexander," " Amanda," and " Winston," etc., which names were adopted by the defendants, and which represented them and their account. Parol evidence was clearly competent to show that these fictitious names, which defendants had adopted, represented them as the parties for whose account the sales were made.

But aside from this, and independent of the question whether the bought and sold notes, called the " slip contracts," consti-

tute a compliance with the statute of frauds, the contracts were fully executed and the transactions closed before the plaintiffs commenced the present suit. It is well settled by the authorities that the defence of the statute of frauds cannot be set up against an executed contract. Dodge v. Crandall, 30 N. Y. 294, 304; Brown v. Farmers' Loan and Trust Co.; 117 N. Y. 266, 273; Madden v. Floyd, 69 Alabama, 221, 225; Gordon, Rankin & Co. v. Tweedy, 71 Alabama, 202, 214; Huntley v. Huntley, 114 U. S. 394, 400; Browne on Stat. of Frauds, § 116. This rule proceeds and rests upon the principle that there is "no rule of law which prevents a party from performing a promise which could not be legally enforced, or which will permit a party, morally but not legally bound to do a certain act or thing, upon the act or thing being done, to recall it to the prejudice of the promisee, on the plea that the promise, while still executory, could not by reason of some technical rule of law have been enforced by action." Newman v. Nellis, 97 N. Y. 285, 291.

We know of no principle on which the agent can be deprived of a right to his commissions and advances in the execution of his agency for a principal on the ground that he has not avoided a contract which was not in strict conformity with the statute of frauds, in the absence of any instruction or instructions from the principal not to comply therewith. Contracts not in conformity with the statute, are only voidable and not illegal, and an agent may, therefore, execute such voidable contracts without being chargeable with either fraud, misconduct, or disregard of the principal's rights. If the statute of frauds was not complied with, in making the sale contracts in the present case, we do not see that the defendant was in a position to take advantage thereof, or that such want of compliance with the statute, after the contracts were executed, would constitute any defence to the action. The suit was not brought on these contracts of sale, which the plaintiff in error claims were voidable under the New York statute of frauds. It is an action by the agents against their principal to recover for work and labor performed, and money paid out at the principal's instance and request, and in the settle-

ment of the principal's business, in which the agent had authority to make disbursements for him. In the present case the plaintiffs had, by their contract, rendered themselves personally responsible for the losses which might, and did, occur under the contracts of sale made for account of the defendant, and as such agents they are entitled to recover against their principal the full amount expended by them for him in the transactions. If in closing out the contracts of sale, profits had been realized on the transactions, whether by reason of decline in the price of cotton, or by the purchases "to cover" the cotton sold, the brokers would, upon well-settled principles, have been liable to their principal for the same. They could not have set up or interposed as a valid defence to such liability that the contracts of sale out of which the profits were realized were not enforceable under the statute of frauds, or were voidable by the agents or the purchaser with whom they contracted. Neither can the principal interpose such an objection as against the agent's right to commission or to reimbursement for his outlays, after the execution of contracts, merely voidable for want of writing. *Coward* v. *Clanton*, 79 Cal. 23; *Morrill* v. *Colehour*, 82 Ill. 618. It is a well-established principle, which pervades the whole law of principal and agent, that the principal is bound to indemnify the agent against the consequences of all acts done by him in the execution of his agency, or in pursuance of the authority conferred upon him, when the actions or transactions are not illegal. Speaking generally, the agent has the right to be reimbursed for all his advances, expenses and disbursements incurred in the course of the agency, made on account of or for the benefit of his principal, when such advances, expenses and disbursements are reasonable, and have been properly incurred and paid without misconduct on the part of the agent. If, in obeying the instructions or orders of the principal, the agent does acts which he does not know at the time to be illegal, the principal is bound to indemnify him, not only for expenses incurred, but also for damages which he may be compelled to pay to third parties. The exception to this rule is where the transaction for which

the agent is employed is illegal, or contrary to good morals and public policy. Addison on Contracts, § 636; Story on Agency, §§ 339, 340, and cases cited in notes. Thus in *Beach* v. *Branch,* 57 Ges. 362, where an agent had sold cotton for account of another, and was obliged to refund the purchase money to the purchaser on account of false packing by the principal, he was allowed to recover the amount so paid from the principal.

It is another general proposition, in respect to the relation between principal and agent, that a request to undertake an agency or employment, the proper execution of which does or may involve the loss or expenditure of money on the part of the agent, operates as an implied request on the part of the principal, not only to incur such expenditure, but also as a promise to repay it. So that the employment of a broker to sell property for future delivery implies not only an undertaking to indemnify the broker in respect to the execution of his agency, but likewise implies a promise on the part of the principal to repay or reimburse him for such losses or expenditures as may become necessary, or may result from the performance of his agency. *Bayley* v. *Wilkins,* 7 C. B. 886; *Smith* v. *Lindo* 5 C. B. N. S. 587. Where a special contract remains executory the plaintiff must sue upon it. When it has been fully executed according to its terms and nothing remains to be done but the payment of the price, he may sue upon the contract or in *indebitatus assumpsit* and rely upon the common counts. In either case the contract will determine the rights of the parties. *Dermott* v. *Jones,* 2 Wall. 1, 9. These general principles have a direct application to the case under consideration upon the facts disclosed by the record.

The decision in *Irwin* v. *Williar,* 110 U. S. 499, cited by plaintiff in error, is not in conflict with the views above expressed, nor does that decision properly apply to the facts in this case. The judgment of the court below in that case was reversed for error in the charge of the court upon the point that the act of one partner in buying and selling grain for future delivery was binding upon the other partner who had not authorized, sanctioned or known of the transactions;

and for the further reason that the court permitted proof of the custom of the Chicago Exchange, when there was no evidence that the defendant below had knowledge of it. In the present case it is shown that the plaintiff in error had full knowledge of the rules and regulations of the New York Cotton Exchange, and of the course of business that had to be and would be adopted by the defendants in error in executing his orders to sell. It is further shown by the testimony that it was expressly understood and agreed in writing, under date of November 3, 1886, between the parties, at the commencement of these transactions that "if a call for margins (which the plaintiff in error was to put up) is not responded to promptly there is to be no carrying on our part, (Richard H. Allen & Co.,) but that the cotton is to be closed out at our discretion." To which agreement the plaintiff in error assented. When the cotton advanced beyond the price at which it was sold for delivery, the plaintiffs below, in pursuance of the terms of the contract with Bibb & Company, called upon the latter to put up margins covering the advance in price. This Bibb & Company failed to do, and the demand was repeated on several occasions. While they were in default in putting up margins, Bibb & Company gave orders to sell about 22,000 bales of cotton for future delivery. These orders R. H. Allen & Company declined to execute until proper margins were put up on the past transactions, and on the orders to sell, and so notified Bibb & Company. That firm continued in default in putting up margins, and a member of the firm of R. H. Allen & Company, on December 29, 1886, asked the defendant below for instructions about the contracts made with his firm by the plaintiffs, but Bibb refused to give any instructions, or to put up margins. He was then informed that the plaintiffs below would close out the contracts they had made for Bibb & Company, to which he made no objection or dissent, and in pursuance of this notice, R. H. Allen & Company, on December 30, 1886, went into the market and bought cotton "to cover" that which they had sold for account of B. S. Bibb & Company, and to make good their contracts. This they were required to do, both by the terms

of their contracts with the parties to whom the cotton had been sold, and by the rules and regulations of the Exchange, of which they were members. If they had failed "to cover," or to comply with such contracts, they would have been liable to expulsion from the Exchange. The cotton which they bought "to cover" these contracts was purchased at the market price, and the difference between that price and the price of 10,000 bales previously sold for Bibb & Company amounted to $19,273.50, which, with the plaintiff's commissions of $750, constituted their claim against B. S. Bibb & Company for the recovery of which the suit was brought. Under these facts, which are uncontroverted, it is clear that the rule laid down in *Irwin* v. *Williar* has no application to this case.

In the case of *Perin* v. *Parker*, 126 Illinois, 201, 211, where the transactions were similar to those in question here, it was said by the Supreme Court of Illinois: "Parker, as agent for Perin, and acting under his orders, sold the corn for Perin, and, under the rules of the board of trade and the custom of the Chicago market, he was personally bound to the purchasers on these contracts of sale. Parker and Perin were dealing with reference to such rules and such custom, with which they were both perfectly familiar. The rules of the board of trade provided, that on time contracts purchasers should have the right to require of sellers ten per cent margins, based upon the contract price of the property bought, and further security, from time to time, to the extent of any advance in the market value above said price. The price of corn had been rapidly advancing since the date of the sales. Parker either had deposited margins upon the contracts, or was liable to be called on for the ten per cent and the additional margins by the persons to whom he had sold the corn. The evidence does not seem to disclose whether or not the purchasers had either received or called for margins. Even if they had not, yet there was an existing legal right in them to call on Parker for margins, and a legal liability upon the latter, within the next banking hour thereafter, to deposit the margins called for, and also, within that time, deposit

with the secretary of the board, or the parties calling for such deposits, duplicate certificates of deposit, signed by the treasurer of the board, or an authorized bank."

This brings us to the consideration of the last assignment of error, viz., Whether under the pleadings and proofs a judgment was properly rendered against the defendant Bibb alone, after a verdict had been given finding that Hopkins was not a partner. On this question we entertain no doubt whatever. The action was against the partnership carried on under the name of B. S. Bibb & Company, the complaint alleging that B. S. Bibb and Thomas H. Hopkins were the partners composing that firm. The proof showed, however, that Hopkins was not a partner, but only a clerk, and that the business done in the name of the firm of B. S. Bibb & Company was that of B. S. Bibb alone.. In support of this objection to the judgment against him, counsel for Bibb rely upon the case of *Walker* v. *Mobile Marine Dock and Mutual Ins. Co.*, 31 Alabama, 529, 531. That was an action against three defendants as the joint owners of a steamboat. They made no objection to the complaint, but interposed a plea of the general issue. On the trial the proof showed that but two of the defendants were owners of the boat, and a verdict and judgment was accordingly rendered against those two and in favor of the other defendant. On a writ of error, the two defendants against whom the judgment was rendered sought a reversal on the ground that under the pleadings no judgment could be rendered against only two of them; and that, inasmuch as the proof disclosed a liability on the part of only two, when the complaint was made against three, the action should have been discontinued; but the Supreme Court ruled otherwise, and held, as stated in the headnote or syllabus of the case, that " where the complaint shows a substantial cause of action, and no objection was interposed to it in the primary court, a misjoinder of causes of action is not available on error." It is true that, in the opinion of the court in that case, reference is made to § 2156 of the then code of the State, which allowed plaintiff to recover against one or more defendants, and it was stated that that section should not be so construed as to au-

thorize a recovery upon a cause of action not embraced in the pleadings, or which was inconsistent with the complaint; but that authorized a judgment in favor of some of the defendants where the proof did not show the absence of a right to recover against the remaining defendants upon the pleadings.

In the present case there is no variance because of the fact that Hopkins was not a member of the firm against whom the plaintiffs below were seeking relief, especially when no objection was made to any misjoinder; and in the objection to the entry of judgment upon the verdict, which he interposed, Bibb did not state any ground on which he rested the objection. But whatever may be said of the case of *Walker* v. *Mobile Dock Co.*, which was decided in 1858, since that time new codes have been adopted, (1876 and 1886,) under the provisions of which, as construed by the later decisions of the Supreme Court of Alabama, it admits of little or no question that, in a suit, like the present, against an alleged partnership, in respect to which the liability is both joint and several, the failure to recover against one of the alleged partners cannot defeat a right to recover against the other, who did business alone in the firm name.

In the case of *Clark* v. *Jones*, 87 Alabama, 474, 482, it was said by the Supreme Court of the State: "It is further objected, that proof of demand against a partnership, of which defendant is a member, does not authorize a recovery on a complaint which counts on an account stated between plaintiffs and defendant individually, and for goods sold to him alone. This question should be regarded as *res adjudicata* in this State. Under the statute, which declares 'any one of the associates, or his legal representative, may also be sued for the obligation of all,' it has been uniformly held, that a partnership creditor may sue one of the members of the firm, for a debt contracted in the partnership name, whether by account or otherwise, and declare upon the demand as his individual liability;" citing Code of 1886, § 2605; *Duramus* v. *Harrison*, 26 Alabama, 326; *Hall* v. *Cook*, 69 Alabama, 87.

In *Smith* v. *Straub*, 41 Kansas, 7, 10, the Supreme Court of

Kansas sustained a judgment in a case almost identical with the present. That was a suit for the price of merchandise against three persons as partners under the firm name of D. I. Ross & Company. They denied the partnership on oath, and on the trial of the case it was found as a fact that there was no partnership, but that only one of the defendants was the owner of the business, that one of the others was an agent, and the other only a clerk in the store. It was contended that no judgment could be rendered in the action against the one who purchased the goods and owned the store, as it was brought against her only as a partner; but the court ruled otherwise, and said: "It may be true that, under the common law practice, in a suit against a partnership firm, no judgment could be rendered against an individual member of that firm; but our statute provides that all contracts shall be construed to be joint and several; and it also provides that in all cases of joint obligations and joint assumptions of copartners or others, suits may be brought or prosecuted against any one or more who are so liable. This action was instituted under the theory that there was a partnership; the plaintiff in error filed her answer, under oath, denying the partnership; and if the proof fixed liability on any one of the parties, a judgment could be rendered against such party individually."

In *Rutenberg* v. *Main*, 47 California, 213, it was held, in an action against several partners where the complaint averred a joint contract made by all the defendants, and the answer denied the contract but did not set up a misjoinder of parties defendant, that the plaintiff should not fail as against all of the defendants, but should have judgment against those who the proof showed had joined in the contract, while the others should have judgment in their favor. *Gillam* v. *Sigman*, 29 California, 637; *Gruhn* v. *Stanley*, 92 California, 86; Pomeroy on Remedies and Remedial Rights, §§ 433, 434.

At common law the objection for misjoinder should be made by answer or plea in a way so as to give the plaintiff a better writ; but at common law where two or more parties are sued as partners, and there is no denial of the partnership,

and no plea alleging a misjoinder, it is doubtful whether after verdict such an objection could be taken.  But however that may be, under the modern codes, including that of Alabama, no such objection can be made after verdict.   In this case the paintiff in error did business under the name of B. S. Bibb & Company, and he should not be heard, when sued as a partner of that firm, to say that he alone composed the firm, and was, therefore, not liable because joined with another defendant who was not a member.

The several errors assigned for reversal of the judgment below are, in our opinion, not well taken, and that judgment is accordingly

*Affirmed.*