**E. J. BURKE, Sr., Appellant,**

v.

**MERRILL LYNCH, PIERCE, FENNER AND SMITH, INCORPORATED, Appellee.**

**No. 4050.**

Court of Civil Appeals of Texas.

Waco.

Nov. 29, 1962.

See also 346 S.W.2d 663.

James E. Barlow, San Antonio, for appellant.

Lang, Byrd, Cross, Ladon & Oppenheimer, San Antonio, for appellee.

McDONALD, Chief Justice.

This is a broker's action against a customer. Plaintiff brokerage firm, Merrill Lynch, Pierce, Fenner & Smith, alleged that defendant Burke, on 30 October 1959, ordered them to sell 2000 shares of Cinerama stock at 4¼ per share; that they executed such order on 1 December 1959, and credited defendant's account for $8,251.43; that plaintiff called on defendant to deliver the stock for transfer to the purchaser, and defendant failed to make delivery; that on 12 January 1960 plaintiff purchased such stock on the open market for defendant's account for 5¾ and 5⅝ per share, or a total of $11,-426.82.

Plaintiff called on defendant to make good its loss of *$3175.39* and defendant refusing, plaintiff filed the instant case for such amount, plus attorneys' fees.

Trial was to a jury which found:

1) Defendant Burke authorized plaintiff brokerage firm to enter an open order for sale of 2000 shares of Cinerama stock for him, at 4¼ per share.

2) Plaintiff sold such stock at such price for defendant.

3) Defendant failed to deliver to plaintiff the stock certificates to cover the sale.

4) Plaintiff purchased 600 shares of Cinerama stock on the open market at

5½, and 1400 shares at 5⅝ to make delivery on the prior sale.

5) Reasonable attorneys' fees for plaintiff's attorney are $1000.

The Trial Court entered judgment on the verdict for $3159.39, plus $1000 for attorneys' fees.

Defendant appeals, contending:

1) The Trial Court erred in not submitting requested defensive issues that there was a specific agreement between the parties that a sale could only be made on the day the order was given.

2) There was no evidence that the stock was originally sold by plaintiff.

3) There was no subrogation agreement from the purchaser to plaintiff, and defendant would have no liability to plaintiff.

4) The Trial Court erred in allowing attorneys' fees.

5) The Trial Court erred in not submitting requested issues concerning customs and practices of the exchanges in notification of the customers when stock is sold, and whether such loss was caused by negligence of plaintiff.

Defendant's 1st and 5th contentions relate to the refusal of the Trial Court to submit requested issues to the jury inquiring whether there was an agreement between the parties that a sale could only be made on the day the order was given; and concerning certain customs and practices of the stock exchanges in notification to customers when stock is sold.

■ The requested issues relate to affirmative defenses which defendant did not plead. The Trial Court properly refused to submit requested issues concerning defenses *not plead* by the defendant. Matthews v. General Accident Fire & Life Assur. Corp., 161 Tex. 622, 343 S.W.2d 251; Jenkins v. Hennigan, Tex.Civ.App., (n.r.e.), 298 S.W.2d 905; Texas Rules of Civil Procedure, rules 67, 277, 297.

■ Defendant's 2nd contention is that there was no evidence that the stock was originally sold by plaintiff. The evidence is undisputed that plaintiff sold the 2000 shares of Cinerama stock on 1 December 1959 at 4¼ per share. The witness Glasser and the witness Crane both so testified. The documentary exhibits further show that plaintiff sold such stock at the price testified and on the day in question. Such documentary exhibits were records and business memoranda kept by plaintiff in the regular course of business and are admissible under Art. 3737e, Vernon's Ann.Civ.St.

■ Defendant's 3rd contention is that there was no subrogation agreement from the purchaser of the stock to plaintiff, and that defendant would have no liability to plaintiff. Defendant further contends that defendant's liability, if at all, would be to the purchaser, and that the most plaintiff could be entitled to would be for loss of his commission. We reject the foregoing. A broker or agent is entitled to recover not only commissions, but all losses sustained in carrying out his principal's contract. Bibb v. Allen, 149 U.S. 481, 13 S.Ct. 950, 37 L. Ed. 819; Kahn v. Harris, Upham & Co., Tex.Civ.App., 247 S.W.2d 139, aff'd 151 Tex. 655, 253 S.W.2d 647; Guay v. Schneider, Bernet & Hickman, Inc., Tex.Civ.App. (n.r. e.), 341 S.W.2d 461. In the Guay case, supra, this court holds in a parallel situation:

"If the principal repudiated the short sale, or failed to meet margin requirements, the broker could buy at the market price—even though higher—to cover the account."

Defendant's 4th contention is that the Trial Court erred in allowing attorneys' fees. The Trial Court allowed $1000 attorneys' fees to plaintiff's attorneys, such being found to be reasonable by the jury. If attorneys' fees are allowable, they must be such under Article 2226, R.C.S., as "personal services rendered."

Is plaintiff's claim one for "personal services rendered"?

Statutes authorizing a recovery of attorneys' fees are penal in character and are to be strictly construed. When strictly construed the words "personal services" are not as broad and all encompassing as the word "services". The term "personal services" indicates that the act done for the benefit of another is done *personally* by a particular individual. The "services" rendered by plaintiff were the purchase and/or sale of stock (for which it received a commission). It is our view that the services here rendered were *not* personal services, under the holding of our Supreme Court in Van Zandt v. Fort Worth Press, Tex., 359 S.W. 2d 893. We sustain the point.

The judgment of the Trial Court is reformed to exclude therefrom the $1000 attorneys' fees, and as reformed is affirmed. Costs on appeal are taxed one-fourth to plaintiff and three-fourths to defendant.

Reformed and affirmed.