**FIRST NATIONAL BANK IN GRAND PRAIRIE, Appellant,**

v.

**H. HENTZ & COMPANY, INC., Appellee.**

No. 5259.

Court of Civil Appeals of Texas, Waco.

Aug. 2, 1973.

Rehearing Denied Aug. 23, 1973.

Haynes & Boone, Robin P. Hartmann, Dallas, for appellant.

Shannon, Gracey, Ratliff & Miller, Sam Rosen, Fort Worth, on appeal for Harry Scaling, third party defendant.

Eldridge, Goggans, Davidson, Silverberg & Weiss, Wallace P. Finfrock, Dallas, for appellee.

HALL, Justice.

Plaintiff, H. Hentz & Co., Inc., is a licensed securities broker. It brought this action against First National Bank in Grand Prairie (hereinafter "Bank") to recover $62,248.41. Plaintiff pleaded that it delivered Bank this sum as the proceeds of sales of stock of Medical Development Corporation (hereinafter "MDC") made by plaintiff while acting as agent and broker for Bank, and that Bank delivered forged stock certificates to plaintiff in settlement of the sales. Plaintiff pleaded other facts which would entitle it to a recovery of that amount from Bank on theories of unjust enrichment, mutual mistake and failure of consideration. Alternatively, plaintiff sought recovery of $78,687.50, the sum it was allegedly required to expend to purchase valid MDC shares on the open market to satisfy the sales after Bank refused to do so. Additionally, plaintiff sought prejudgment interest.

Bank answered that the stock in question "was pledged at defendant Bank as collateral for a loan to Harry S. Scaling by Harry S. Scaling and John B. Baird"; that Bank was never the owner of the stock; that it never had "the capacity to direct or authorize plaintiff to sell" the shares; that in all transactions complained of by plaintiff it "acted as an intermediary and as such warranted only that the Bank acted honestly and in good faith in the sale of the subject securities" and "this warranty was complied with fully"; that the money received from plaintiff for the sale of the fraudulent stock "was used to pay the note of Harry S. Scaling" with the remainder credited to Scaling's personal account; and that the bank never received the money "on its own behalf or for its own benefit." In a third-party claim against Scaling and Baird, Bank alleged that in December, 1970, they "borrowed $60,000 from Bank and delivered to the Bank as collateral for said loan" the MDC stock in question; that Scaling and Baird determined to sell the stock and informed Bank and plaintiff of their wish to do so; that the sale was "accomplished through the Bank's 'customer account' with plaintiff as an accommodation" to Scaling and Baird and without charge to them by Bank; that if the stock certificates were in fact forgeries, then Scaling and Baird, and not Bank, are responsible to plaintiff. Bank sought judgment of indemnity against Scaling and Baird for any recovery awarded plaintiff against Bank.

After a trial without a jury, judgment was rendered January 5, 1973, in favor of plaintiff against the Bank for the sum of $62,248.41, with interest thereon at 6% per annum from February 9, 1971. Judgment in a like amount was rendered in favor of the Bank over and against Scaling and Baird.

In response to motions by both parties, the court filed findings of fact and conclusions of law. From those findings, we glean the following facts: Bank established a securities account with plaintiff which was styled by them "First National Bank of Grand Prairie Customers' Account." Beginning about October 1, 1970, and continuing into February, 1971, Bank forwarded various securities to plaintiff from time to time with instructions to sell the same. Plaintiff sold the securities as instructed and remitted the proceeds to Bank. Some of the sales were made by Bank on loan collaterals, and the proceeds

were applied by Bank in liquidation of the loans. Other such sales effected by plaintiff on instructions from Bank were made pursuant to instructions given by the Bank's customers to the Bank and the proceeds therefrom may or may not have been used to liquidate collateral for loans owing to the Bank. Plaintiff would confirm each sale made through Bank's "customer account" by written confirmation to Bank which showed Bank as plaintiff's customer. Monthly statements of account were regularly sent to Bank by plaintiff showing charges and credits made to Bank's "customer account." Bank made no objections to any of these transactions and did not protest any of the confirmations or monthly statements. Bank settled each of the trades in accordance with the terms of the confirmations, until on or about February 11, 1971. On December 29, 1970, Harry S. Scaling borrowed $60,000 from Bank and executed a promissory note therefor. John B. Baird owned two certificates purportedly evidencing 5,000 shares of MDC stock. With Baird's permission, Scaling "pledged and delivered" the certificates "to the Bank as collateral for the loan." In the month of January, 1971, "with the consent and authorization of the Bank and Scaling," plaintiff made sales through Bank's "customer account" of 4,800 shares of MDC stock "so pledged to the Bank", for the total net price of $62,248.41. Plaintiff had no knowledge of Baird's interest in these securities at the time of the sales. As each sale was effected, plaintiff forwarded to Bank, and Bank received and held, copies of confirmations of the sales. Each confirmation expressly provided that the sale was made by plaintiff as broker for the Bank in that particular transaction, and showed Bank as plaintiff's customer. Bank did not protest or object to the contents of any confirmation within ten days after the receipt thereof.[1] On January 8, 1971, Bank, with Scaling's authorization, delivered two purported certificates of MDC stock to plaintiff in settlement of the sales effected, and to be effected, by plaintiff.[2] The certificates were "forgeries and nullities." However, at the time the certificates were delivered to plaintiff, they appeared regular and negotiable in every respect, and neither Bank nor plaintiff had any notice or knowledge that they were invalid. On or before the settlement date set forth in each sale confirmation, plaintiff remitted to Bank the net proceeds of the sale. Each check and remittance by plaintiff was made payable to the Bank in settlement of the trade. The net proceeds of all of the sales ($62,248.41) was paid by January 26, 1971. Bank retained the proceeds of the sales, applied them in full payment of Scaling's loan, and deposited the balance above the loan with Bank to the account of Scaling. Rules of Practice of the National Association of Securities Dealers, Inc., required plaintiff to deliver to the purchasing brokers 4,800 valid shares of MDC stock in negotiable and readily transferrable form not later than February 9, 1971, else the purchasing brokers could buy in such shares on the open market and charge the cost thereof to

1. The face of each confirmation contained these words: "We have this day made the following transaction for your account . . . This transaction is subject to the terms and conditions set forth on the reverse side . . . Please notify us immediately of error or omission." Among the terms on the reverse side was the provision: "4. You will be deemed to have accepted the transaction described in this confirmation and to have approved each statement of account current as rendered, unless written notice of objection shall be given to us within ten days after the mailing of such confirmation or statement of account by us."

2. The certificates were enclosed in a letter from Charles W. Howell, Bank's vice-president, to Fred Lefevre, plaintiff's registered representative. The letter reads, in part: "In accordance with the instructions of Mr. Harry Scaling, I am enclosing the following Stock Certificates: . . . These certificates are endorsed in street names and are to be sold for our account by your firm and the proceeds of sale to be remitted to this Bank for the credit and advice Mr. Scaling. It is our understanding that you have sold 2,000 shares at this time and that you anticipate additional sales the week of January 11, 1971."

plaintiff. After receiving notice that the certificates were invalid, on February 9, 1971, plaintiff made demand in writing upon Bank to deliver good shares by February 12, 1971. Bank failed to make delivery, and plaintiff then went into the open market, purchased 4,800 shares of MDC stock at a total cost to plaintiff of $78,687.-50, and delivered those shares to the purchasing brokers in settlement of the sales. Plaintiff was compelled to make the "buy-in" of the valid shares in order to protect itself from claims of the purchasing brokers. The $62,248.41 paid by plaintiff to Bank was paid in reliance upon a mutually mistaken belief by plaintiff and Bank that the two certificates were genuine, validly issued, properly endorsed and readily transferrable certificates. The sole consideration for plaintiff's payment to Bank of the sum of $62,248.41 was to be the delivery to plaintiff of genuine certificates for 4,800 shares of MDC stock, validly issued, properly endorsed and readily transferrable. Bank has been unjustly enriched to the extent of $62,248.41 by reason of the payment of such funds to Bank by plaintiff which has lost the use thereof since February 9, 1971. Bank received no brokerage fees or benefits from the stock sales other than the repayment of the loan to Scaling.

Among other conclusions of law, the court made and filed the following:

1. In making the sales of the 4,800 shares of MDC stock, plaintiff was acting as Bank's broker and agent.

2. Bank "neither adopted nor ratified the sales as sales on behalf of the Bank."

3. "The only warranty made by the Bank in delivering the certificates to plaintiff was the warranty of an intermediary as that term is set forth in Sec. 8.306(c) of the Texas Business And Commerce Code,[3] which was that the Bank warranted its own good faith and authority to make the delivery. The Bank did not breach that warranty.

4. Plaintiff is entitled to recover $62,248.41 from Bank (with interest thereon at 6% per annum from February 9, 1971, "the date of demand by plaintiff against the Bank") upon any one or all of the following legal theories:

    a. Reimbursement from Bank for damages suffered while acting as Bank's broker.

    b. Mutual mistake.

    c. Failure of consideration.

    d. Unjust enrichment by Bank.

Scaling and Baird did not appeal. In five points, Bank asserts the judgment is erroneous for the following reasons:

1. "Bank was an 'intermediary' pursuant to Section 8.306(c) of the Bus. & Com.Code and incurred no liability to plaintiff in the transaction in question."

2, 3, and 4. Bank was "merely the bailee and agent for Scaling" in the transaction, and:

    a. Any benefits received by it from plaintiff as the result of mutual mistake would be recoverable from Scaling.

    b. Any failure of consideration for the money paid to Bank by plaintiff is attributable only to Scaling and not to Bank.

    c. Any unjust enrichment accrued only to Scaling and not to Bank.

---

3. Sec. 8.306(c), V.T.C.A., Bus. & C. (hereinafter "Bus. & Com.Code"): "Where security is delivered by an intermediary known to be entrusted with delivery of the security on behalf of another or with collection of a draft or other claim against such delivery, the intermediary by such delivery warrants only his own good faith and authority even though he had purchased or made advances against the claim to be collected against the delivery."

5. No statutory or contractual right exists for prejudgment interest, and it should not have been allowed.

Plaintiff comes forward with five cross-points asserting, among other complaints, that (1) under the court's findings of fact, plaintiff is entitled to reimbursement for its total expenditure of $78,687.50, with interest thereon at 6% per annum from February 22, 1971, the date plaintiff made demand on Bank for payment of that sum; (3) the record establishes as a matter of law that Bank ratified the sales as its own, and the court erred in concluding otherwise; and (5) the court erred in concluding that Bank acted only as an intermediary within the meaning of Sec. 8.306(c) of the Bus. & Com.Code.

■ There is an abundance of evidence to support the findings upon which the court concluded that plaintiff was Bank's broker-agent in the MDC stock sales. Bank does not question the sufficiency of such evidence. Rather, Bank cites the court's conclusion that Bank assumed, and fulfilled, only the warranties of an intermediary as set forth in Sec. 8.306(c) of the Bus. & Com.Code in its dealings with plaintiff, and asserts that for this reason Bank cannot be, and is not, liable to plaintiff under any legal theory. However, we agree with plaintiff that the record does not support the conclusion that Bank was an intermediary.

Bank pleaded that it was a pledgee of the MDC stock certificates. The only evidence on the question is that Bank was a pledgee of the certificates. And the court found, without challenge, that when the sales in question were made the stock was pledged to the Bank.

Sec. 8.306(d) of the Bus. & Com.Code provides that the circumstances under which "a pledgee or other holder for security" makes only the warranties of an intermediary under Sec. 8.306(c) are (1) redelivery of the security to the debtor, and (2) delivery of the security to a third person after payment and on order of the debtor. Bank did not fall within either category in the dealings in question. At the time of delivery of the certificates to plaintiff, Bank, as pledgee, held a fully perfected security interest in the certificates. Sec. 9.305, Bus. & Com.Code. It was no mere intermediary.

■■ We also agree with plaintiff that the conclusion that Bank did not adopt or ratify the MDC stock sales as sales on its behalf is contrary to the undisputed evidence. There is no contention by Bank, and no suggestion in the evidence, that plaintiff deviated in the least from its agency contract with Bank. In any event, Bank received and used the proceeds of the sales to rid itself of a loan secured by worthless collateral, and still refuses to return the proceeds. A principal who, with knowledge of the material facts, retains the benefits of a contract made in his behalf by an agent, even if it be unauthorized, cannot repudiate the contract or any part of it. Having knowledge of the facts and retaining the benefits, he ratifies the contract in its entirety as a matter of law and is so bound. See the many authorities cited in Condor Petroleum Co. v. Greene, (Tex.Civ.App., 1942, writ ref.) 164 S.W.2d 713, 721.

■ In our opinion, the conclusion that the relationship of Bank and plaintiff was one of principal and broker-agent is dispositive of the rights of the parties and entitles plaintiff to a recovery from Bank of $78,687.50, the sum plaintiff was required to spend to purchase valid stock to satisfy the sales made by it for Bank. It is an established rule of law that a broker or agent is entitled to reimbursement from his principal for the amount of expenditures or losses resulting proximately or necessarily from the good faith execution of the principal's contract. Oats v. Dublin Nat. Bank, 127 Tex. 2, 90 S.W.2d 824, 829 (1936); Burke v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., (Tex.Civ.App., 1962, no writ hist.) 363 S.W.2d 392, 394; Butler

v. Continental Oil Co., (Tex.Civ.App., 1944, no writ hist.) 182 S.W.2d 843, 846; 2 Tex.Jur.2d 583, Agency, Sec. 134; 12 C.J. S. Brokers § 77, p. 167; 3 Am.Jur.2d 612, Agency, Sec. 243: Cf. Mechem, Outlines Of The Law Of Agency, Secs. 421, 652 (3rd ed. 1923); Restatement of Agency, Second Edition, Sections 438, 439. Plaintiff's good faith is not questioned by Bank.

By way of counterpoints, plaintiff argues several non-warranty principles under which it claims Bank would be liable even if Bank acted as an intermediary. Of course, we do not reach those questions.

■ The record shows without dispute that, by letter, plaintiff made demand for payment to it by Bank on or before February 22, 1971, for the money expended by plaintiff for purchase of the good stock. Plaintiff is entitled to interest on that sum from that date. In Texas, "interest as damages is recoverable as a matter of law when the principal damages are fixed by conditions existing at the time the injury is inflicted." Texas Company v. State, 154 Tex. 494, 281 S.W.2d 83, 92 (1955); Watkins v. Junker, 90 Tex. 584, 40 S.W. 11 (1897).

Plaintiff's 1st, 3rd and 5th cross-points are sustained; and Bank's 1st and 5th points are overruled. Plaintiff's 2nd and 4th points, and Bank's 2nd, 3rd and 4th points are thereby rendered immaterial.

Insofar as the judgment provides that plaintiff shall recover from Bank and Bank shall recover from Scaling and Baird the sum of $62,248.41 with interest thereon at the rate of 6% per annum from February 9, 1971, until paid, it is reformed to provide that plaintiff shall recover from Bank and Bank shall recover from Scaling and Baird the sum of $78,687.50 together with interest thereon at the rate of 6% per annum from February 22, 1971, until paid. In all other respects the judgment is correct; and, as reformed, it is affirmed. The costs of this appeal are taxed against Bank.

Reformed and affirmed.

## ON MOTIONS FOR REHEARING

Harry S. Scaling, a third-party defendant, asserts in a motion for rehearing that we erred when we modified that part of the judgment which deals with Bank's recovery from him and Baird. We agree.

■ No appeal was taken by, or against, Scaling and Baird. They are not named as obligees in the appeal bonds of either plaintiff or Bank. Thus, they are not before us and we are without jurisdiction to change the judgment insofar as it affects them. Jackson v. Fontaine's Clinics, Inc., (Tex.Sup., 1973) 499 S.W.2d 87.

Bank also seeks a rehearing or, alternatively, certification to our State Supreme Court of a question related to the construction of Sec. 8.306, Bus. & Com.Code. A careful consideration of these motions has led us to the conclusion that they are without merit. They are overruled.

Scaling's motion is granted. That portion of our original opinion in which we attempted to modify the judgment by increasing Bank's recovery from Scaling and Baird is deleted therefrom. The remainder of the opinion, including that part in which we reform the judgment to allow plaintiff a recovery from Bank of $78,687.50 together with interest thereon at the rate of 6% per annum from February 22, 1971, until paid, is left unchanged.