BOARD OF TRADE OF CITY OF CHICAGO v. CHRISTIE GRAIN & STOCK CO. et al.

(Circuit Court, W. D. Missouri, W. D.   July 5, 1902.)

No. 2,541.

1. EXCHANGES—PROPERTY RIGHT IN QUOTATIONS—PROTECTION IN EQUITY.
   The Board of Trade of the City of Chicago has at least a qualified property right in the quotations made on its exchange based on transactions between its members and gathered by its own employés, and in their distribution, and in such right it is entitled to protection by a court of equity, as against one who obtains and uses such quotations without complying with reasonable regulations established by it as a condition to the right of others to receive and use its quotations.

2. SAME—CLAIM OF PUBLIC RIGHT IN QUOTATIONS—PROVINCE OF COURTS.
   In the absence of legislative action, a court of equity is not authorized to deny relief to a corporation conducting a market exchange merely because the chancellor is of the opinion that its business, originally private, has grown to such magnitude and assumed such importance that the public is entitled to an interest therein, and to a control thereof commensurate with that interest. When such a condition arises, the measure of the public control is limited by the extent of the public interest, and the initiative in declaring a public use and the making of regulations pertaining thereto are of legislative, and not judicial, cognizance.

8. SAME—RIGHT TO EQUITABLE RELIEF—ILLEGALITY OF BUSINESS.
   The rules of the Board of Trade of the City of Chicago prohibit gambling transactions on its exchange, and impose upon both parties to a sale for future delivery the obligation to deliver and receive the commodity sold, and in view of such rules all sales made thereunder are presumptively valid, and the burden of proof rests upon one asserting the contrary to show that neither party to the transaction contemplated an actual delivery; nor does the mere fact that gambling transactions may be carried on in its exchange, in violation of its rules, establish the claim that the organization is a bucket-shop concern, doing business in violation of the laws of the state, and therefore not entitled to maintain a suit in equity to protect its property right in its market quotations, it being indisputable that it transacts a vast amount of legitimate business.

In Equity.   Suit for injunction.

Frank Hagerman and Henry S. Robbins, for complainant.

A. B. Jenks and Harkless, O'Grady & Chrysler, for defendants.

¶ 1. See Exchanges, vol. 21, Cent. Dig. § 16.

HOOK, District Judge. This is a suit to enjoin the Christie Grain & Stock Company and C. C. Christie from receiving or surreptitiously acquiring the quotations of the Chicago Board of Trade, and to enjoin the telegraph companies from distributing or giving such quotations to them. The Christie Company and Mr. Christie make the defense in the case; the telegraph companies maintain a neutral attitude. The controversy between the parties is determinable by the solution of the two principal propositions stated at the argument:

Has the board of trade a property right in its quotations which may be protected in a court of equity?

Is the board of trade guilty of violating the penal laws of the state of Illinois, in which it is domiciled, prohibiting the keeping of bucket shops, and are the quotations in question the result in a material degree of gambling transactions carried on with its acquiescence?

The conclusions arrived at will be briefly stated: The board of trade has at least a qualified property right in the records of the transactions between its members and in the distribution thereof. Such records constitute the quotations in controversy in this case. That the quotations are the subject of a property interest, and that the complainant has some right with reference thereto, is generally recognized by the decisions of the courts. It is unnecessary to the case in hand to define the exact limitations of this property right, or to ascertain the full extent of complainant's control over its quotations. It is sufficient if it possesses a measure of ownership and control which justifies its attitude towards the defendants.

The quotations are the result of transactions between the members of the board of trade upon the floor of an exchange hall owned by it and maintained at its own expense. They are gathered by its own employés. They possess a positive commercial value when instantaneously and continuously transmitted and distributed in the city of Chicago and throughout the country, and are a source of substantial revenue to the complainant. It is conceded that no legal obligation rests upon the board of trade to gather and distribute the quotations. It may abandon the gathering and distribution of them while continuing the transaction of its usual business.

The complainant does not wholly deny the Christie Company and Mr. Christie the right to acquire and use the quotations, but it has required the telegraph companies, with whom it has contracted for their transmission and distribution, to first secure from every person desiring them a signed application, in which is embodied an agreement that the quotations shall not be used in the conduct of a bucket shop, and that they are for the private and individual use of the applicant and the business in which he is engaged. These conditions are well within the limits of a reasonable exercise of the right of property and power of control over the quotations possessed by the complainant. The defendants the Christie Company and Mr. Christie decline to comply with this requirement.

It is further contended by the resisting defendants that the continuous market quotations are of such a character, and the board of trade has so conducted itself with reference to the same, that they have become clothed with a public interest, and that as long as it continues

in the business of collecting and furnishing them to the public it must do so without unjust discrimination as to persons, and must furnish them to all who may desire to obtain them for lawful purposes and upon the same terms and conditions. Assuming that this contention is well founded, it is not clear that it helps the defendants in view of the fact that the conditions imposed by the board of trade are not unreasonable or prohibitive, and that, acting through the telegraph companies, it applies them alike to all persons who desire the quotations for lawful purposes. But, aside from this, I am of the opinion that courts cannot by their decrees assume the initiative in declaring private property to be impressed with a public use. There should first exist that condition of growth or expansion of a private business or of its relation to the public service or public necessity which justifies the assertion of a public interest therein, and the accompaniment of public control, followed by legislative recognition or declaration of such condition. The power to bring under governmental control the lawful business of individuals and private corporations not vested with the power of eminent domain, and who are not engaged in what, by common acceptation, is.termed a public service, for the reason that such business, through the enterprise and prudent management of its conductors, has grown to be of great public interest and concern, is of the gravest and most momentous character. It is doubtful doctrine that in the absence of legislative action a suitor in a court of equity may be denied relief merely because the chancellor is of the opinion that his business, originally private in its character, has grown to such magnitude that the public is entitled to an interest therein and to a control thereof commensurate with that interest. When such a condition arises, the measure of the public control is limited by the extent of the public interest, and the making of regulations pertaining thereto is of legislative, not judicial, cognizance.

It is also urged, in opposition to the granting of relief to the complainant, that it does not come into court with clean hands, in that it is engaged in the constant violation of the laws of the state of Illinois against the maintenance of bucket shops, and that the quotations in controversy are the result of gaming ventures permitted to be transacted on its exchange. While the evidence which has been presented gives rise to a suspicion that in very many of such transactions a delivery of the property bought or sold was not contemplated by any of the parties thereto, it is not sufficient to justify a general decree of outlawry against the board of trade and the business conducted by its members. The rules of that body expressly denounce the practice of dealing in differences on the fluctuations in the market price of any commodity, and without a bona fide purchase and sale for actual delivery, and provide for the expulsion of offending members. These rules impose upon the seller the obligation to deliver the property sold, and upon the purchaser the obligation to receive it. Orders given by customers for execution on the exchange are understood to be executed according to the well-settled rules and usages of the board of trade. All dealings between the members are required to be in conformity with such rules and usages. The supreme court observed in Clews v. Jamieson, 182 U. S. 461, 492, 21 Sup. Ct. 845, 857, 45 L. Ed.

1183: "Of course, we do not say that these rules actually prevent gambling on the exchange. It is possible, if not probable, that gambling may be and is in fact carried on there, but it must be in violation of, and not pursuant to, the rules."

The evidence which has been adduced in this suit must be read in the light of the rule that contracts for the future delivery of a marketable commodity are presumptively valid, and the burden of proof rests upon him who asserts the contrary. Ponder v. Cotton Co., 40 C. C. A. 416, 100 Fed. 373; Irwin v. Williar, 110 U. S. 507, 4 Sup. Ct. 160, 28 L. Ed. 225; Clews v. Jamieson, supra. Moreover, it is not sufficient to invalidate a contract of that character that one of the parties never intended an actual delivery of the commodity bought or sold, but, on the contrary, contemplated a settlement of the transaction by the difference between the contract price and market value. The contract is valid if an actual transfer of the property is contemplated by at least one of the parties thereto. Bibb v. Allen, 149 U. S. 481, 13 Sup. Ct. 950, 37 L. Ed. 819.

Common experience justifies the observation that in the great majority of cases it is impossible to secure the requisite evidence of the gaming character of such transactions. And it is not competent to any finite being to search the minds of the participants, and discover their purposes and intentions. A vast volume of legitimate business is admittedly transacted on the exchange. The board of trade performs a most important function in the internal commerce of this country; in fact, of such importance and of such magnitude have its operations become that defendants are brought to the earnest contention that it is no longer a wholly private concern, but is a quasi public corporation, and that its property has become affected ..ith a public interest. It is obvious that this contention is not wholly consonant with the claim that it is maintaining what the law denounces as a bucket shop. A public interest cannot be predicated upon the results of violations of the law. It is worthy of note that although the laws of Illinois contain adequate provisions against gambling in such commodities as are dealt in on the exchange of complainant, and the keeping of places where such gambling is permitted, the courts of that state have refrained, so far as has been shown, from declaring the Chicago Board of Trade a bucket shop, and the evidence in this case does not warrant this court in making such a judicial declaration.

The complainant is entitled to a decree.