FRED R. BARNES *vs.* SAMUEL A. SMITH.

Middlesex.    March 16, 1893. — June 21, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Amended Answer — Evidence — Purchase of Shares — Wagering Contract — Commissions of and Moneys advanced by Broker.*

A contract for the sale of shares is not a wagering contract, as between seller and purchaser, unless both of them understood that no delivery was to be made of the shares; and the question as to the purchaser's intention cannot be left to conjecture.

If there is evidence sufficient to show that A. employed B. as a broker to make purchases or sales of shares for him, with the understanding by both that no shares should be actually delivered, but that B. as a broker should either make bargains to that effect with the other party or parties, or that he should protect A. from being called on to make or accept any actual deliveries of shares, then B. would be a participator in an illegal contract, and would be debarred from recovering for his commission or for moneys advanced by him for the furtherance of such illegal contract. But a mere expectation by B. and A. that the purchaser would be willing to adjust the transactions on the basis of receiving or paying differences when there was no understanding to that effect, or to the effect that B should protect A. from being called on to make or accept any actual deliveries of shares, would not be sufficient to render the contract illegal; and B.'s participation as a broker in making sales for A. under that expectation would not debar him from recovering for his commissions, or for moneys advanced by him for A. in aid of the transactions.

CONTRACT upon two promissory notes, dated December 4, 1891, given by the defendant to the plaintiff. The answer was a general denial. The amended answer set forth that, if the defendant "made the notes mentioned in plaintiff's declaration, the considerations for the same are illegal and void. And the defendant says the plaintiff is a broker engaged in the sale and purchase of stocks on margin, so-called; and defendant says that he bought certain stocks on margin from the plaintiff; that the notes mentioned in plaintiff's declaration were given by the defendant to

the plaintiff in payment of margins alleged to have been paid by plaintiff for defendant on stocks sold by plaintiff to defendant on margin ; and the defendant says that at the time plaintiff sold him said stocks on margin, and at the time said margins were alleged to have been paid by plaintiff for which said notes were given, the plaintiff was not the owner of said stocks, or certificates of stocks, or the assignee thereof, or authorized by the owner or assignee or his agent to sell said stocks, and that there was no intention on the part of the plaintiff to deliver the certificates of stock so purchased on margin as aforesaid, and no intention on the part of the defendant to receive the certificates of stock or pay the price for the same; that there was a mutual understanding between the plaintiff and the defendant that no delivery or receipt of the stock was intended or expected, or any payment of the price of the stock to be made. The defendant further says that the contract for the furtherance of which the notes mentioned in plaintiff's declaration were given was a wagering contract, and illegal and void."

Trial in the Superior Court, before *Hopkins*, J., who directed a verdict for the plaintiff, and, at the request of the defendant, reported the case for the determination of this court. If the ruling was correct, judgment was to be entered on the verdict; otherwise, judgment was to be entered for the defendant, or the verdict was to be set aside and a new trial granted. The facts sufficiently appear in the opinion.

*J. J. Harvey*, for the defendant.

*J. C. Burke*, for the plaintiff.

ALLEN, J. We are not certain that we correctly understand the grounds of defence set up in the amended answer, but it does not appear that the direction of the presiding justice to return a verdict for the plaintiff rested on the ground of variance between the answer and the evidence. *Kennedy* v. *Owen*, 131 Mass. 431. The only question, therefore, which we have considered, is whether the evidence of the defendant was sufficient to entitle him under proper pleadings to go to the jury.

There is a great difficulty in understanding the defendant's case, because to a large extent the defendant's counsel and the plaintiff, while he was testifying in his cross-examination as a witness, were at cross purposes. Throughout the cross-examination

of the plaintiff, the defendant's counsel proceeded on the assumption that the defendant had directed the plaintiff as a broker to buy for him certain railroad shares in the market, and it was assumed during a part of the cross-examination that when shares so bought rose in value the defendant would lose money. The court intimated that these questions were immaterial to the issue raised on the pleadings, but the cross-examination proceeded at considerable length, with no intimation that the real transactions conducted by the plaintiff as broker for the defendant were sales of stock on account of the defendant, instead of purchases for him. When the defendant himself became a witness, his counsel assumed, and he testified, that the transactions were directly the reverse, namely, that the defendant had directed the plaintiff as broker to sell for him the same number of railroad shares that had before been spoken of as having been bought for him. Now, as between the plaintiff and the defendant, assuming the defendant's testimony to be true, the jury would have been well warranted in finding that they both understood that the defendant did not own the shares which he had ordered to be sold for him, and that he had no intention to perform his contract of sale by the actual delivery of the securities. But if the plaintiff acted as broker, there was another party to the contract of sale, namely, the purchaser, and there was no evidence to show that he participated in the wagering intention. The defendant introduced no evidence upon this point. No inquiry was made to ascertain who the other party to the sales was, if there was one, his name was not disclosed nor asked for, and it did not appear that either the defendant or the plaintiff had ever had any prior transactions with him. The whole question as to the purchaser's intention was left to conjecture. The contract of sale was not a wagering contract as between seller and purchaser unless both of them understood that no delivery was to be made of the shares sold. Benjamin on Sales, (6th Am. ed.) §§ 503, 504. It may be conjectured that such was the fact in this case; but the defendant did not go far enough with his evidence to warrant a finding that the purchaser so understood. The sales were made, as we infer, by means of telegrams, but they were not produced nor their contents stated. In this respect, the case resembles *Roundtree* v. *Smith,* 108 U. S. 269, where for similar reasons it was held that

the evidence failed to show a wagering contract. between the principals.

All that there is left, then, is the question whether the plaintiff is cut off from recovering on his notes by reason of his own agreement or understanding with the defendant. The rule of law upon this subject is as follows. If there was evidence sufficient to show that the defendant employed the plaintiff as a broker to make purchases or sales of shares for him, with the agreement or understanding on the part of both that no shares should be actually delivered, but that the plaintiff as a broker should either make bargains to that effect with the other party or parties to the transactions, or at any rate that he should protect the defendant from being called on to make or accept any actual deliveries of shares, then the plaintiff would properly be found to be a participator in an illegal contract, and would be debarred from recovering for his commissions or for moneys advanced by him for the furtherance of such illegal contract. But a mere expectation on the part of the plaintiff and of the defendant that the purchaser of shares would be willing to adjust the transactions on the basis of receiving or paying differences when there was no agreement or understanding to that effect, or to the effect that the plaintiff should protect the defendant from being called on to make or accept any actual deliveries of shares, would not be sufficient to render the contract illegal; and the plaintiff's participation as a broker in making sales for the defendant under that expectation would not debar him from recovering for his commissions, or for moneys advanced by him for the defendant in aid of the transactions. *Harvey* v. *Merrill*, 150 Mass. 1, and cases there cited.

The evidence of the defendant was sufficient to entitle him, under proper pleadings, to go to the jury upon this aspect of the case.

Since it does not appear that the ruling was upon the ground of a variance, it seems to us that a new trial should be granted, at which leave to amend, if deemed necessary by the defendant, may be allowed or refused in the discretion of the court.

*New trial granted.*