## HILL et al. v. LEVY.

### (District Court, E. D. Virginia. November 24, 1899.)

**1. CONTRACTS—VALIDITY—SPECULATIVE OR GAMING CONTRACTS.**

A contract for the sale of goods, with future delivery, is valid if the parties really intend that there shall be an actual delivery of the property and payment of the price, though the seller does not then own the goods, and has no other means of procuring them than by a purchase in the market; but if no actual delivery is contemplated, but only that one party shall pay the other the difference between the contract price and the market price at the date set for executing the contract, it is invalid, as a wagering or gaming contract.

**2. SAME—TEST OF ILLEGALITY.**

It is no defense to an action on such a contract that the purchaser did not .expect or intend an actual delivery of the goods, if the seller contemplated such delivery, and would have delivered the property on demand, and failed to do so only because it was not called for; the test of illegality is the intention, not alone of one of the parties, but of both.

**3. SAME—BURDEN OF PROOF.**

In an action on a contract for the purchase and sale of goods, with future delivery, a party who alleges that the contract is invalid, as a gaming or wagering contract, must assume the burden of proving its illegality; the contract is presumed to be legal.

**4. BANKRUPTCY—PROVABLE DEBTS—GAMING CONTRACT.**

Where the respondent in a petition in involuntary bankruptcy resists an adjudication on the ground that the debt of the petitioning creditor (evidenced by a promissory note of which he is the indorsee) is invalid under the state statute against gaming, because the note was given to respondent's brokers to cover his losses arising out of certain purchases and sales of wheat negotiated for him by said brokers on the board of trade,

he must assume the burden of proving, by clear and conclusive evidence, that the dealings in question were mere speculations in the rise and fall of prices, and that neither party contemplated any actual sale and delivery of the wheat; failing this, the debt will be provable in bankruptcy, and, if sufficient in amount, will warrant an adjudication.

In Bankruptcy. On petition for adjudication in involuntary bankruptcy.

William P. McRae, for petitioning creditors.

Richard B. Davis, for bankrupt.

WADDILL, District Judge. The questions in this case arise upon a petition filed by Zora Hill against M. Levy, alleging the bankruptcy of the latter, and asking that he be adjudicated a bankrupt in the involuntary proceedings thus inaugurated. The petitioner avers that the creditors of the alleged bankrupt are less than 12 in number, and that, therefore, one creditor whose debt exceeds $500 has the right to institute proceedings. The alleged ground of bankruptcy is that the said Levy, while totally insolvent, and within four months of the time of filing the said petition, executed a general deed of assignment, conveying all of his property and estate to trustees for the payment of his debts, making preferences among them in contravention of the bankruptcy law, and excluding petitioner, who held his note for the sum of $2,875.50. To this petition the defendant, Levy, filed his plea and answer, admitting insolvency and the existence of the assignment with preferences, but denied that he owed petitioner anything, and averred that his alleged debt was based upon a gaming consideration, which was void under the Virginia statute, whether in the hands of the original payee or an innocent holder thereof, and was not, therefore, a debt provable under the bankruptcy law. Said Levy further alleged that his creditors were more than 12 in number, and hence that petitioner could not, without other creditors joining with him, inaugurate involuntary proceedings in bankruptcy against him.

Upon this condition of the pleadings, considerable evidence was introduced, petitioner attempting to show that the bona fide creditors of the defendant were less than 12 in number, and that the debts sought to be set up by the defendant were either due to persons within the inhibited degree of relationship specified in the bankruptcy law, or of debts secured in the deed of assignment mentioned in the petition as an act of bankruptcy, and therefore should not be reckoned in the number of creditors in determining petitioner's right to file a petition against the said defendant.

Before the question of the right of the petitioner, a single creditor, to inaugurate the proceedings was determined, or indeed finally submitted to the court for its consideration, two other persons, to wit, J. S. De Shazor and Bartlett Roper, trustee of Edwin P. Goodwin, bankrupt, filed their joint petition, and asked to join in the original petition against the defendant for involuntary bankruptcy. To these petitions Levy answered, denying the existence of any indebtedness due to either De Shazor or Goodwin, and averring that, if any indebtedness existed, said petitioners were so connected with

the original petitioner that their debts were tainted with the gaming consideration aforesaid, and that, therefore, they could not recover. Considerable evidence was taken on the question of the existence of the indebtedness, and whether the same was based upon a gaming consideration; and the case is now finally submitted to the court for its determination upon the issues thus raised, and whether the defendant, Levy, should be adjudicated an involuntary bankrupt.

The first and most material question to be determined is whether, in point of fact, the original and intervening petitioners have provable debts against the bankrupt. If so, and said claims are not void by reason of the gaming consideration alleged to be incident to their inception, then the various other questions presented are unnecessary to be decided, as the creditors are sufficient in number and amount to institute the proceedings. The original petitioner claims to be a holder for value of a note of $2,875.50, drawn by M. Levy on the 13th of October, 1898, to the order of W. A. Porterfield & Co., and by them indorsed without recourse to the petitioner, said note being a renewal of two other notes, one for $2,184, dated in June, 1898, and another for $694, dated September 13, 1898, drawn by said Levy in favor of W. A. Porterfield & Co., and by them indorsed to the petitioner, Zora Hill. The intervening petitioner J. S. De Shazor is the holder of a duebill for $10 of the defendant Levy, and said Edwin P. Goodwin's trustee sets up an open account of $40 due him from said Levy.

W. A. Porterfield & Co., it seems, were grain brokers doing business in the city of Washington and various other places throughout the country, including the city of Petersburg, and the indebtedness with said Levy arose by reason of transactions between them in reference to the purchase of wheat by them for him during the year 1898. The defendant, Levy, insists that his transactions with said firm were mere speculations in grain; that he gave orders through an agent of W. A. Porterfield & Co.; that he had no dealings directly with said firm, so far as giving the orders were concerned; that his entire transactions contemplated dealing in futures in wheat, and the payment of the difference, according to the fluctuations of the market, between the contract price of purchase and the price for which the same were sold; and that no actual purchase or delivery of wheat was ever contemplated or intended. Said Porterfield & Co., on the other hand, insist that they do a legitimate brokerage business; that they acted solely as brokers in their dealings with Levy; that they were members of the Chicago Board of Trade, making purchases for said Levy and selling for him whenever requested so to do; that they had no manner of interest in what they did, further than to secure their commissions, and that each and every purchase of wheat they made contemplated an actual delivery, which could have been had whenever said Levy requested it; that the transactions thus had were bona fide, and that upon no other terms could purchases have been made on the Chicago Board of Trade; that the indebtedness in question arose from payments made by them to their agents in Chicago to make good the purchases made on ac-

count of said Levy, which he recognized, fully acquiesced in, gave his negotiable notes for the amount thereof, and subsequently caused them to be renewed; and that the notes, as well as the renewals, were for value transferred to the petitioner Zora Hill.

The law applicable to this case, assuming that the Virginia statute (section 2836, Code 1887) in reference to gaming applies to transactions of the kind in question, seems to be well settled. As stated by Mr. Benjamin, it is that:

"A contract for the sale of goods to be delivered at a future day is valid, even though the seller has not the goods, or any other means of getting them than to go into the market and buy them. But such a contract is only valid when the parties really intend and agree that the goods are to be delivered by the seller and the price to be paid by the buyer. If, under guise of such contract, the real intent be merely to speculate in the rise and fall of prices, and the goods are not to be delivered, but one party is to pay to the other the difference between the contract price and the market price of the goods at the date fixed for executing the contract, then the whole contract constitutes nothing more than a wager, and is null and void." 2 Benj. Sales (6th Am. Ed., by Corbin) p. 717, § 828; Rountree v. Smith, 108 U. S. 269, 2 Sup. Ct. 630, 27 L. Ed. 722; Irwin v. Williar, 110 U. S. 499, 508, 510, 4 Sup. Ct. 160, 28 L. Ed. 225; Embrey v. Jemison, 131 U. S. 336, 342, 9 Sup. Ct. 776, 33 L. Ed. 172.

Whether or not the petitioners should be defeated in their recovery because of the alleged wagering character of the transactions out of which, it is claimed, their several debts arose, and whether, as a matter of fact, anything is due to them, or either of them, are questions which can alone be determined from a full consideration of all of the facts of the case and the circumstances surrounding the several transactions.

Upon the whole evidence, my conclusion is that the several petitioners are due the amounts, respectively, claimed by them; and that while it is true as to said debts, and particularly of the debt of the petitioner Zora Hill, a suspicion or presumption might arise from the circumstances surrounding the transactions out of which they arose that said debts were tainted with a gaming or wagering consideration, still I do not feel, in the light of the evidence as adduced, that I should so hold, or would be justified in so doing. To declare the debts of the petitioners invalid, upon the evidence in this case, would be, in effect, to hold that all brokerage transactions involving the purchase and sale of commodities of the character dealt in are void. While such a conclusion from a purely moral standpoint, as well, indeed, as from a business view, would be "a consummation devoutly to be wished," still, taking into consideration its legal bearing, it cannot be reached in this case. The law authorizes speculations in grain and other products, as well as in stocks, bonds, and property of such like character, and places only the inhibition that actual sales and deliveries of articles bought and sold shall be contemplated. When this is done, the transactions are valid, and have to be enforced by the courts. The evidence in this case seems to be clear, however much the circumstances may seem to indicate that no actual sale and delivery of wheat was contemplated, that as to each transaction such was the agreement, and that the wheat purchased would have been actually delivered if desired,

and was not so delivered because not called for. The petitioners, and those through whom the transactions were made, positively so swear, and exhibit the printed terms of the contract under which the purchases were made, viz.:

> "W. A. Porterfield & Co., Bankers and Commission Stock Brokers.
>
> "————, 189-.
>
> "M. ————: We have ———— for your account and risk, subject to the rules and regulations of the New York Stock Exchange, New York Cotton Exchange, or Chicago Board of Trade, respectively.
>
> "Respectfully,
>
> ————,
>
> "Per ————.
>
> "All orders for the purchase or sale of any article are received and executed with the distinct understanding that actual delivery is contemplated, and that the party giving the orders so understands and agrees. It is further understood that on all marginal business the right is reserved to close transactions when margins are running out, without further notice, and to settle contracts in accordance with the rules and customs of exchange where the order is executed."

And they, moreover, prove that no transactions, not contemplating an actual delivery of the commodity purchased, could have been had through the board of trade of Chicago, where the purchases in the case were made.

The burden of proof to show the invalidity of these transactions rests upon the defendant. The contracts are presumed to be legal, and the burden to prove illegality rests upon those making the claim. Irwin v. Williar, 110 U. S. 507, 4 Sup. Ct. 160, 28 L. Ed. 225. The evidence to show invalidity should be clear and conclusive, and the mere fact that the defendant, one of the parties to the transactions, may not have contemplated an actual delivery of the wheat purchased, will not suffice. The test of illegality is the intention, not alone of one of the parties, but of both or all. Bangs v. Hornick (C. C.) 30 Fed. 97; Ward v. Vosburgh (C. C.) 31 Fed. 12, 14, 15; Lehman v. Feld (C. C.) 37 Fed. 852.

So far as the claim of the original petitioner, Zora Hill, is concerned, which is the only debt of considerable amount involved, it is evidenced by negotiable note of the defendant given on account of money advanced by W. A. Porterfield & Co., the brokers through whom the transactions in controversy were had, to cover purchases of wheat made by them for him and for which he failed to pay. At the maturity of the original notes given for the money thus advanced, at the earnest solicitation of said Levy, a renewal of the note was had, and with the express stipulation and agreement in writing that, in consideration of the extension, payment of the new note would be promptly made when due and without further offset or extension. This renewal note, as indeed were the original notes, is held by the said petitioner, Zora Hill, who claims to have acquired them for value, before maturity, and without notice of the alleged illegal consideration. While the fact of the advancement of the money for the defendant by his agent, and the position claimed by petitioner Hill of an innocent holder for value of the defendant's negotiable note, may not, under the law, disentitle defendant to interpose so serious a defense as that said transactions are based upon

a gaming or wagering consideration, still it but accentuates the fact that, under such circumstances, the defense should be clearly made out by those relying upon it to avoid the payment of their obligations made and placed upon the market for sale. The defendant has not only failed to bear the burden placed upon him of making out his defense, but the preponderance of the evidence seems to be clearly against him. Indeed, his own evidence is all offered to support his view of the case, and an examination of what he says will show that, upon the essential features of the case, in his statement he is vague, uncertain, and unsatisfactory to such an extent that a court would not be justified in adopting his version of the transactions under consideration, where the same is seriously disputed and the evidence of others furnished to the contrary.

With the view taken by the court of the evidence, it will be unnecessary to pass upon any of the various other questions raised in the case and elaborately argued by counsel. The allowance of the three claims presented by the petitioners will entitle them to an adjudication of the defendant, M. Levy, as an involuntary bankrupt, and it will be so ordered.