PONDER et al. v. JEROME HILL COTTON CO.

(Circuit Court of Appeals, Eighth Circuit. February 13, 1900.)

No. 1,172.

1. TRIAL—DIRECTION OF VERDICT.

Before the submission of a case to the jury in a federal court, there is always the preliminary question for the judge, and that question is, not whether there is no evidence, but whether there is any substantial evidence, upon which the jury can properly render a verdict in favor of the party who produces it; and, if there is no such evidence, it is the duty of the court to direct a verdict against him.

2. CONTRACTS—VALIDITY—WAGERING AGREEMENTS.

Contracts for the future delivery of a marketable commodity are not per se void or voidable, but are presumptively valid; and to render such a contract illegal, as a wagering contract, it must be shown that there was a mutual intention that the goods should not be delivered, but that the contract should be solved by the payment of the difference between the contract price and the market price at the time fixed for delivery.

3. SAME.

The fact that one or both of the parties to such a contract intended to sell the contract, or his rights thereunder, before the time fixed for delivery, does not affect its validity.

4. SAME—NOTE GIVEN FOR LOSSES—DEFENSES.

Defendants executed a note to brokers through whom, as their agents, they had made a contract for the purchase of cotton for future delivery, for the amount of the loss paid for them by such brokers on the contract, which had been sold before the time for delivery arrived. The contract

was valid, and the seller intended to, and did, deliver the cotton thereon at the time agreed. *Held*, that to render the note invalid, as having arisen out of a gambling contract, defendants had the burden of showing that they did not intend to receive the cotton under the contract, but that it should be discharged by payment of the difference between the contract and market price at time of delivery, and also that the brokers knew such fact.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

Charles Coffin, J. M. Moore, H. L. Ponder, and W. B. Smith, for plaintiffs in error.

U. M. Rose, W. E. Hemingway, and G. B. Rose, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge.   Complaint is made of but one error in this case, and that is that at the close of the trial before a jury the court instructed them to return a verdict in favor of the defendant in error.   At the close of the trial of a case before a jury in the national courts, there is always a preliminary question for the judge before the case can be submitted to the jury; and that question is not whether there is no evidence, but whether there is any substantial evidence, upon which the jury can properly render a verdict in favor of the party who produces it.   Railway Co. v. Belliwith, 28 C. C. A. 358, 83 Fed. 437, 440; Commissioners v. Clark, 94 U. S. 278, 284, 24 L. Ed. 59; North Pennsylvania R. Co. v. Commercial Nat. Bank of Chicago, 123 U. S. 727, 733, 8 Sup. Ct. 266, 31 L. Ed. 287; Railroad Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213; Laclede Fire-Brick Mfg. Co. v. Hartford Steam-Boiler Inspection & Insurance Co., 19 U. S. App. 510, 519, 9 C. C. A. 1, 4, 60 Fed. 351, 354; Gowen v. Harley, 12 U. S. App. 574, 585, 6 C. C. A. 190, 197, 56 Fed. 973, 980; Motey v. Granite Co., 36 U. S. App. 682, 686, 20 C. C. A. 366, 368, 74 Fed. 155, 157.   The question presented, therefore, is whether or not there was any substantial evidence presented at the trial in support of the defense interposed by the plaintiffs in error.   The determination of this question necessitates a brief consideration of the issue and of the evidence.

The action was based on a promissory note made by the plaintiffs in error, Willis M. Ponder and Andrew M. Ponder, for the sum of $3,705.59, on March 4, 1892, payable to the order of Hill, Fontaine & Co., and by them indorsed and sold to the defendant in error, the Jerome Hill Cotton Company, a corporation.   The defense was that the note was given for moneys advanced by Hill, Fontaine & Co., for the co-partnership, W. M. Ponder & Co., which was composed of the plaintiffs in error and one Charles J. Free, in payment of losses on gambling contracts in cotton futures made by W. M. Ponder & Co. through Hill, Fontaine & Co., as their agents.   The evidence disclosed these facts:   Willis M. Ponder and A. M. Ponder were not gamblers.   They were merchants of Walnut Ridge, in the state of Arkansas, and Hill, Fontaine & Co. were cotton factors and

commission merchants at St. Louis, in the state of Missouri. In October, 1891, Hill, Fontaine & Co. had about 500 bales of cotton, which Ponder & Co. had bought in Arkansas, and shipped to them at St. Louis, to hold, and ultimately to sell, when the owners so directed. Ponder & Co. were of the opinion that the price of cotton would rise, and they intended to hold this cotton, and sell it at the expected advanced price. Without their direction, and against their wishes, Hill, Fontaine & Co. sold 200 bales of this cotton, and Ponder & Co. complained of this act. Hill, Fontaine & Co. answered that they regretted their action, but that there could be no loss, because they could buy for Ponder & Co. contracts for the delivery of this cotton in the following March at a price as low as that at which they had sold the 200 bales. This complaint and answer were made in a conversation between W. M. Ponder and Jerome Hill, and Ponder testified: That he had never bought any cotton futures before. That Hill told him he would have to advance a margin of $1 a bale; that, if the margin went down, he would have to put up more, to get the advance in the market. That they did not buy any spot cotton in that way. That, if Hill had told him that he would have to accept a delivery of the cotton at the time of the purchase, he would not have made the deal. That he told him there would be no delivery of the cotton when he gave him the order to buy it. And that some time after he had ordered the purchase of contracts for the delivery of 200 bales, and after the price had declined, Hill said, "You had better take two hundred more bales, to cover losses on the two hundred futures you have, to keep up with it." The result was that Ponder & Co directed Hill, Fontaine & Co. to buy for them contracts for the delivery of 400 bales of cotton in the following March, and Hill, Fontaine & Co. executed these directions through members of the New York Cotton Exchange, who bought the contracts for Ponder & Co. in accordance with its rules. The contracts thus purchased were valid and enforceable agreements for the delivery of the cotton in March in the city of New York. The vendors bound by the contracts intended to deliver the cotton according to the terms of the contracts, tendered it at the proper time, and actually delivered 200 bales of it. Before the time for the delivery of the cotton arrived, however, the price of it gradually declined; and on February 3, 1892, Hill, Fontaine & Co. requested Ponder & Co. to make their margin good, and they failed to do so. Later, in February, 1892, Ponder & Co.'s contracts were sold on the New York Cotton Exchange at a loss of $3,765.59, which Hill, Fontaine & Co. paid for them, and to reimburse them for this expenditure the plaintiffs in error made the note in suit. Hill, Fontaine & Co. never bought, sold, or dealt in cotton futures on their own account, and in this transaction they were the agents of Ponder & Co. to communicate their orders to the members of the cotton exchange who made the purchases for them, and Hill, Fontaine & Co. neither charged nor received any commission or compensation for their services. There was testimony that those who reside in the state of Arkansas and in that vicinity, who purchase contracts for the future delivery of cotton, rarely, if ever,

receive the delivery of the cotton under their contracts. It was upon this state of facts that the court below held that the plaintiffs in error had produced no substantial evidence in support of their defense, and instructed the jury to return a verdict against them for the amount due upon their note.

The result attained under this instruction is equitable and just, and it ought not to be disturbed unless it was reached by a violation of some principle of law or rule of evidence. Hill, Fontaine & Co. were the agents of Ponder & Co. They bought and sold the contracts for the future delivery of the cotton and paid the loss pursuant to the directions of their principals, and the latter ought to reimburse them for their loss unless some principle of law or rule of public policy forbids such action. Nevertheless, if the contracts which Ponder & Co. bought were wagering contracts, they were illegal and void; and if, when Hill, Fontaine & Co. directed their purchase, they knew or had reasonable notice that Ponder & Co. intended them as mere wagers, they were participants in an unlawful transaction, and the note they obtained was without legal consideration and void. But contracts for the future delivery of cotton or other personal property are not per se void or voidable. They are presumptively legal and valid, for parties have a perfect right at law and in equity to agree to buy or to sell any personal property to be delivered in the future. It is only when, under the guise of such a legal contract, the parties to it really intend that the goods shall not be delivered, and that the obligation of the contract shall be discharged by the payment by one party to the other of the difference between the contract price and the market price of the goods at the date fixed for executing the agreement, that the contract becomes a wager, and falls under the ban of the statutes of the various states, and of the public policy of the nation. Irwin v. Williar, 110 U. S. 499, 508, 4 Sup. Ct. 160, 28 L. Ed. 225; Embrey v. Jemison, 131 U. S. 336, 345, 9 Sup. Ct. 776, 33 L. Ed. 172; Bibb v. Allen, 149 U. S. 481, 492, 13 Sup. Ct. 950, 37 L. Ed. 819. It is not sufficient to avoid such a contract that one of the parties to it intended that the goods should not be delivered, and that the obligations of the parties should be solved by the payment of the difference between the contract price and the market price at the time fixed for the delivery. Both parties must have had that intention, or the contract is valid. Irwin v. Williar, 110 U. S. 508, 4 Sup. Ct. 160, 28 L. Ed. 225; Bibb v. Allen, 149 U. S. 481, 493, 13 Sup. Ct. 950, 37 L. Ed. 819. Nor is the fact that one or both of the parties to the contract intended to sell the agreement, or their rights under it, before the time of delivery came, any objection to its validity. Parties have the same rights to buy contracts for the future delivery of personal property, with the intention of selling them again, that they have to buy the property itself with that intention. The result is that the note on which this action is founded, and the contracts for the delivery of the cotton, from the purchase and sale of which its consideration sprang, were presumptively legal and valid, and the burden was on the plaintiffs in error to establish the fact that the note was given for an illegal consideration. Roundtree v.

Smith, 108 U. S. 269, 2 Sup. Ct. 630, 27 L. Ed. 722; Irwin v. Williar, 110 U. S. 499, 507, 508, 4 Sup. Ct. 160; 28 L. Ed. 225; Bibb v. Allen, 149 U. S. 481, 492, 13 Sup. Ct. 950, 37 L. Ed. 819. For the purposes of this case, we concede, but we do not decide, that a broker or agent who assists his principal to purchase or sell contracts for the future delivery of personal property, which he has notice that his principal intends as wagering contracts, cannot recover for advances he makes or obligations he incurs in such transactions. But under this concession it was indispensable to the support of the burden which rested upon the plaintiffs in error that they should produce substantial evidence (1) that Ponder & Co. not only intended not to receive the cotton under the contracts, but also that they intended that the obligations of the contracts should be discharged by the payment of the difference between the market price and the contract price at the time fixed for the delivery; and (2) that their agents, Hill, Fontaine & Co., knew or had reasonable notice of this intention when they directed the purchases. In all this they have lamentably failed. Neither of the plaintiffs in error testified that he intended these contracts to be wagers, or that he intended that their obligations should be discharged by the payment or receipt of the differences between the contract prices and the market prices at the times fixed for the deliveries; nor is there any such evidence in the case. The extreme limit of the testimony on this subject goes no further than to show that Ponder & Co. knew that they would not be compelled to accept a delivery of the cotton under the contracts. But this knowledge is perfectly consistent with an intention on their part to sell their contracts before the time for delivery came, as they did, and as they had the same right to do that they had to sell the cotton which they had bought in Arkansas, and were holding in St. Louis for higher prices. Nor is there any substantial evidence that Hill, Fontaine & Co. had any knowledge or notice that Ponder & Co. intended the contracts they purchased to be mere wagers. They were not such in fact. They were valid, enforceable contracts for the actual delivery of the cotton. The vendors testified that they intended to deliver it. The contracts and the rules of the New York Cotton Exchange required its delivery. It was tendered in due time, and 200 bales of it were actually delivered under the contracts. Ponder & Co. had bought these contracts to replace cotton which they thought had been sold too soon, and which they intended to sell later at higher prices. The natural inference was that they bought the contracts to sell again as they had bought the cotton. They had never made bets or wagering contracts before. There was nothing in the contracts themselves, nothing in the character or previous transactions of the plaintiffs in error, nothing in this transaction, to notify their agents that they intended to violate the laws of the land and the public policy of the nation, and to use these contracts, which were fair and legal on their face, to make wagers on the market price of cotton. Our conclusion is that there was no substantial evidence in the case upon which a jury could have properly rendered a verdict

for the plaintiffs in error, and that the peremptory instruction to them to return a verdict for the defendant in error was right. The judgment below is accordingly affirmed.