(104 N. W. 1112.)

THE JOHN MILLER COMPANY v. JOHN A. KLOVSTAD.

Opinion filed October 2, 1905.

**Gaming — Dealing in Options — Evidence.**

1. An agent sues its principal to recover for losses sustained in transactions on the Duluth Board of Trade in the sale of grain for future delivery. *Held*, that there was no sufficient evidence requiring the trial court to submit to the jury the issues raised by defendant's answer, and hence the ruling of the court in directing a verdict for the plaintiff was proper. Sales of commodities for future delivery are presumed to be legitimate, and the burden is upon the party asserting the contrary to establish such fact.

**Same — Validity of Contract.**

2. A contract for the sale of a commodity for future delivery is valid if the parties intend that there shall be an actual delivery; but if the parties do not contemplate an actual delivery of the commodity sold, but agree that one party shall pay the other the difference between the contract price and the market price at the date set for the execution of the contract, it is void as a wagering or gaming contract.

**Same — Delivery — Intent of Parties.**

> 3. In an action on such a contract, it is no defense that the vendor did not intend an actual delivery of the commodity, if the other party contemplated such delivery. The test of illegality is the intention, not alone of one of the parties, but of both.

Appeal from District Court, Steele county; *Pollock, J.*

Action by the John Miller Company against John A. Klovstad. Judgment for plaintiff, and defendant appeals.

Affirmed.

*F. B. Morrill* and *A. W. Fowler,* for appellant.

A controverted fact should never be taken from a jury where there is a reasonable doubt upon the state of the evidence. Vickery v. Burton, 6 N. D. 245, 69 N. W. 193; McRea v. Bank, 6 N. D. 353, 70 N. W. 813; Cameron v. Gt. N. Ry. Co., 8 N. D. 124, 77 N. W. 1016; Warnken Co. v. Langdon Merc. Co., 8 N. D. 243, 77 N. W. 1000; Pewonka v. Stewart, 13 N. D. 117, 99 N. W. 1080; Slatterly v. Donnely, 1 N. D. 264, 47 N. W. 375.

In option deals, the burden of proof is on him asserting the option. It is very slight and the court will scrutinize the contract very closely. Sprague v. Warren, 41 N. W. 1113; Barnard v. Backhaus, 6 N. W. 252, 9 N. W. 595.

Court takes judicial notice that a majority of the transactions on the boards of trade are purely fictitious, speculative and gambling in futures. Mohr v. Miesen, 49 N. W. 862; Dows et al. v. Glaspell, 4 N. D. 259, 60 N. W. 60.

The transaction was a mere gambling one. Dows v. Glaspell, supra.

If an agent disregards his principal's instructions and loss ensues, he is liable for such loss, and if he has made advances, in thus disobeying instructions, he cannot recover them or his commissions. Butts v. Phelps, 79 Mo. 302; Fuller v. Ellis, 39 Vt. 345; Whitney v. Express Co., 104 Mass. 152; Scott v. Rogers, 31 N. Y. 676; Galigher v. Jones, 129 U. S. 193.

Custom and usage will not authorize a departure from such instructions. Wonless v. McCandless, 38 Iowa, 20; Bliss v. Arnold, 8 Vt. 252; Catten v. Smith, 24 Vt. 85; Parsons v. Martin, 11 Gray, 115.

*Guy C. H. Corliss,* for respondent.

If a principal authorizes a broker to deal upon a known board of trade, such authority is to deal in accordance with the rules and usages of such board unless specifically instructed otherwise. Clews v. Jamieson, 182 U. S. 461; Bibb v. Allen, 149 U. S. 481, 489, 13 Sup. Ct. Rep. 950; 37 L. Ed. 819; Bailey v. Bremsley, 87 Ill. 556; Mechem on Agency, 485; Maxter v. Paine, L. R. 4, Ex. 210; Mitchell v. Newhall, 15 M. & W. 308; Nickalls v. Merry, L. R. 7, H. L. 530; Robinson v. Mellette, L. R. 7, H. L. 805, 826; Cotheam v. Ellis, 107 Ill. 419; Samuels v. Oliver, 130 Ill. 73; Bailey v. Bensley, 87 Ill. 559.

If the principal gives ambiguous instruction, he, not the agent, must suffer, if loss ensues thereby. Anderson v. Bank, 4 N. D. 182, 59 N. W. 1029; Mechem on Agency, sections 314, 315, 484.

An estoppel exists when the party against whom it is urged has been negligent and his negligence has misled the other party. Robbins et al. v. Blanding, 91 N. W. 844; Sterns v. Johnson, 19 Minn. 240; Mechem on Agency, sections 154-157.

The party claiming that a transaction is a wager has the burden of proof. Hill v. Levy, 98 Fed. 94; Irwin v. Williar, 110 U. S. 499, 28 L. Ed. 225; Boyle v. Henning, 121 Fed. 376; Johnston v. Miller, 53 S. W. 1052; Ponder v. Jerome Hill Cotton Co., 100 Fed. 373; 40 C. C. A. 416; Bibb v. Allen, supra; Rountree v. Smith, 108 U. S. 269, 27 L. Ed. 722; Clewes v. Jamieson, 182 U. S. 461, 488, 21 Sup. Ct. 845, 45 L. Ed. 1183.

The intention of one party not to make or receive a delivery, but to bet on the market, is not sufficient; both must intend to bet. Hill v. Levy, 87 Fed. 94; Bangs v. Hornisk, 30 Fed. 97; Ward v. Vosburg, 31 Fed. 12; Lehman v. Field, 37 Fed. 852; Parker v. Moore, 115 Fed. 799; Irwin v. Williar, 110 U. S. 499, 28 L. Ed. 225; Bibb v. Allen, supra; Ponder v. Jerome Hill Cotton Co., 100 Fed. 373; Clewes v. Jamieson, 182 U. S. 461, 489; Johnston v. Miller, 53 S. W. 1052; Boyle v. Henning, 121 Fed. 376; Parker v. Moore, 125 Fed. 807; Bibb v. Allen, supra; Irwin v. Williar, 110 U. S. 49, 28 L. Ed. 225; Parker v. Moore, 115 Fed. 799; Rountree v. Smith, 108 U. S. 269, 27 L. Ed. 722; Dows v. Glaspell, 4 N. D. 251; Ponder v. Jerome Hill Cotton Co., 100 Fed. 373; Clewes v. Jamieson, 182 U. S. 461, 21 Sup. Ct. 845, 45 L. Ed. 1183; Barnes v. Smith, 159 Mass. 344, 34 N. E. 403, 47 Central Law Journal, 172, 130 Fed. 507-512.

In the following cases it was held that there was no evidence to go to the jury: Ponder v. Jerome Hill Cotton Co., 100 Fed. 373;

Bibb v. Allen, supra; Johnston v. Miller, 53 S. W. 1052; Clews v. Jamieson, 182 U. S. 461, 494, 21 Sup. Ct. 845, 45 L. Ed. 1183.

Principal must indemnify agent for losses incurred in the course of the agency. Mechem on Agency, section 653; 1 Am. & Eng. Enc. Law, 1117.

FISK, District Judge. Appeal from a judgment rendered by the district court of Steele county upon a verdict directed for plaintiff. The facts necessary to a correct understanding of the questions involved are as follows: During the time covered by the transactions between the parties the plaintiff was a commission broker and member of the Duluth board of trade, engaged in buying and selling grain for other persons upon commission, and the defendant was engaged in operating an elevator at Dwight, in this state, and in buying and shipping grain to Duluth to be there sold. The plaintiff, through its president, John Miller, made arrangements with defendant in the month of August, 1902, whereby the defendant was to purchase grain at Dwight for shipment to plaintiff, at Duluth, to be sold upon the usual commission, the plaintiff to furnish defendant with the necessary funds to carry on such business at a rate of interest agreed upon. It was talked over and understood that the speculative feature of the business, by reason of fluctuations of the market, should be obviated by a system of "hedging," which means that the defendant would, for all grain purchased by him, sell, or, in other words, obtain a contract through his said brokers to sell a like amount to arrive or for future delivery. Selling to arrive and selling for future delivery have a well-defined meaning upon the board of trade and in the business world; the former expression meaning that the vender had fourteen days in which to make delivery of the warehouse receipts, and the latter expression meaning that he has any day during some specified month in the future in which to make such delivery. This system of "hedging" eliminates the risk of loss which otherwise might occur by a decline in the market price during the time necessarily consumed in transporting the grain to market. Of course, in order to make the "hedge" perfect, the grain sold to arrive or for future delivery should at all times just equal the amount of grain purchased by defendant and unsold. As soon as the grain shipped arrives at its destination and is sold, the "hedge" must be taken down; or, in other words, an equal amount of grain must be purchased for delivery at the same time as the

grain which was sold for such future delivery is to be delivered, and thus one is made to balance or offset the other. Such "hedging" transactions are consummated through the broker upon the board of trade upon instructions from the principal, and, when the shipment of grain against which there is a "hedge" arrives and is sold, the custom, under the undisputed evidence, is for the broker to remove the "hedge" if the shipment is not accompanied with instructions to the contrary; but, if the shipment is accompanied with instructions to sell on arrival, such instructions, under the universal custom, are equivalent to specific instructions to the broker not to apply such shipment on the outstanding sales for future delivery.

The undisputed evidence discloses that plaintiff, pursuant to instructions from time to time, sold for defendant, upon the Duluth board of trade, 17,000 bushels of wheat for December delivery, presumably intended by defendant as "hedges," and that pursuant to such arrangement between the parties the defendant, from time to time, shipped to plaintiff in the aggregate 21,000 bushels of grain, of which shipments only 4,000 bushels of wheat were applied on these "hedges;" the balance having been sold and the proceeds credited to defendant's account. The remaining 13,000 bushels sold for December delivery not having been delivered by defendant, as plaintiff contends, the plaintiff was required, under the rules of the board of trade, to fulfill its contract, which it did by purchasing a like amount for delivery at that time, and in doing so it incurred a loss, which, including commissions and interest, aggregates the sum sued for in this action. The undisputed evidence discloses that operations on the Duluth board of trade are restricted to actual transactions in the purchase and sale of grain, and that dealing in what is commonly called "options," which does not contemplate the delivery of the actual grain, but is a mere gambling transaction on the fluctuations of the market, is strictly forbidden. The evidence also discloses that there is a clearing house connected with the board through which all deals are adjusted each day by striking balances between the broker and such clearing house, also that all transactions upon the board are carried on in the names of the brokers without disclosing their principals, and that each broker becomes personally responsible for the fulfillment of all contracts made by him in behalf of his principal. The evidence discloses that accompanying or preceding each shipment of grain the defendant sent the plaintiff specific in-

structions as to the disposition of the same, except as to five cars aggregating something over 4,000 bushels of wheat, which shipments were not accompanied or preceded by any instructions or directions as to its disposition. Plaintiff concedes that as to these five cars, there being no directions from the defendant as to its disposition, that it was plaintiff's duty to apply the same to the extent of 4,000 bushels upon the December sales, which it did, but that as to the remaining shipments, which were accompanied by specific directions to sell on arrival, it had no authority from the defendant to apply the same upon such December sales. It is the defendant's contention that under the arrangement or agreement between the plaintiff and defendant it was the duty of the plaintiff to take down the "hedges" without express instructions from the defendant, as soon as the shipments were received and sold.

The defense interposed by defendant is, first, that the transactions or deals alleged to have been made by plaintiff for and on account of defendant were merely gambling transactions and dealing in so-called "options," and that the delivery of actual wheat was never at any time contemplated by either of the parties; and, second, that the alleged transactions or deals were carried on under an agreement whereby plaintiff was to protect defendant by buying back the future wheat which defendant had sold as fast as actual wheat arrived, and that plaintiff failed and neglected to act and do as it had agreed, and because of such failure the loss for which plaintiff seeks to recover was incurred, and not otherwise. The defendant contends that there was sufficient evidence to require a submission of the issues to the jury, and hence that the trial court erred in directing a verdict in favor of the plaintiff. This is the sole error complained of. In disposing of this assignment of error, we must keep in mind the well-settled rule that a motion made at the close of the trial for a directed verdict is in the nature of a demurrer to the evidence, and hence all fair inferences from the evidence must be drawn in favor of the party against whom such verdict was directed, and where honest and intelligent men may fairly differ in their conclusions from the evidence upon any material fact in the case it is error to withdraw the evidence from the consideration of the jury. Tested by this rule, we are unable, after searching the record diligently, to find any evidence sufficient to go to the jury in support of either of the defenses urged by the defendant, and we think, therefore, that the action of the trial court in granting plaintiff's motion to direct a verdict for the plain-

tiff was proper and must be sustained. It is true, as contended by counsel for appellant, that the sum sued for in this action represents the difference between what the December "hedges" were sold for and what it costs the plaintiff to buy such "hedges" back, with commissions and interest added, and the plaintiff's right to recover must stand or fall upon the nature of such "hedge" transactions, and, if, as alleged in defendant's answer, there was no intention by either party to deliver the actual grain on these "hedges," but that they were intended to be merely speculative and gambling transactions, there could be no recovery under the doctrine announced in Dows & Co. v. Glaspell, 4 N. D. 251, 60 N. W. 60. But what does the evidence disclose as to the nature of these "hedge" transactions, and as to the intention of the parties? What the secret or undisclosed intention of the defendant was is not controlling, so that, even conceding that defendant intended merely to gamble in so-called options, still where is there a scintilla of evidence showing that plaintiff so understood the defendant? The undisputed evidence shows that such a transaction could not be consummated upon the Duluth board of trade, for under its by-laws the same was strictly prohibited. The plaintiff could have no possible incentive to do otherwise than follow implicitly the instructions of defendant, and the undisputed evidence shows that it did do this. The fair construction to be placed upon the defendant's testimony is that because he contemplated that these "hedges" would be removed by purchasing a like amount of wheat for future delivery and offsetting one contract against the other, instead of delivering the actual wheat, that therefore the transaction was a mere wager, and illegal. This position is inconsistent even with defendant's testimony. On page 49 of abstract defendant testified: "I am not a gambler, and do not believe in gambing. I believe in legitimate business transactions. I never intended to make any other transaction in this case, except legitimate business transactions." He does not pretend that he ever gave plaintiff any kind of notice or intimation that he was merely making wager deals, and plaintiff was fully justified in believing that he intended that plaintiff should make actual sales for him on the board of trade. Defendant was seeking protection by actual sales in the form of "hedges" to offset purchases made by him. He testifies that it was the understanding between him and John Miller at Dwight that such "hedges" should be kept up as a protection, and it is, to say the least, extremely inconsistent for him to take the posi-

tion now that such "hedges" were intended as a mere gambling transaction. As before stated, the evidence is conclusive that no other kind of sales could be made upon the board, except actual sales, and the undisputed evidence shows that plaintiff made actual sales pursuant to instructions. Furthermore, immediately after making each sale plaintiff reported the same to defendant in writing, and each report had printed thereon in a conspicuous place the following notice: "These transactions are made subject to the rules and customs of the exchange at the place of contract, and contemplate the actual delivery of the specified commodity, and the right is reserved to close the transactions when margins are exhausted, or nearly so, without giving further notice."

In the face of these facts it would be a strange rule which would permit the defendant to urge his secret purpose to gamble as a defense, especially when such secret purpose was concealed from plaintiff. Defendant's testimony upon this point is so repugnant to his sworn purpose in creating these "hedges," and to all the other evidence and circumstances in the case, that we hold it to be insufficient to warrant submitting the same to the jury, especially in view of the positive testimony of plaintiff's witnesses. For similar cases holding that there was no evidence to go to the jury, see Hill v. Levy (D. C.) 98 Fed. 94, 99; Parker v. Moore (C. C.) 125 Fed. 807; Ponder v. Jerome Hill Cotton Co., 100 Fed. 373, 40 C. C. A. 416; Bibb v. Allen,; 149 U. S. 481, 490, 13 Sup. Ct. 950, 37 L. Ed. 819; Johnson v. Miller (Ark.) 53 S. W. 1052; Clews v. Jamieson, 182 U. S. 461, 494, 21 Sup. Ct. 845, 45 L. Ed. 1183. We are not unmindful of the doctrine announced in Dows & Co. v. Glaspell to the effect that the courts will carefully scrutinize these transactions for the purpose of ascertaining the real intention of the parties, and will pierce the disguise usually resorted to in order to clothe the transaction in the garb of legitimate business dealing; but, when thus scrutinized, we are unable to say, from the evidence, that the transactions were not strictly legitimate. The law presumes that they were legitimate, and the burden of proof is on the party making the claim that the transaction was a mere wager to show that such is the fact. Hill v. Levy (D. C.) 98 Fed. 94; Irwin v. Williar, 110 U. S. 507, 4 Sup. Ct. 160, 28 L. Ed. 225; Boyle v. Henning (C. C.) 121 Fed. 376; Johnston v. Miller (Ark.) 53 S. W. 1052; Ponder v. Jerome Hill Cotton Co., 100 Fed. 373, 40 C. C. A. 416; Bibb v. Allen, 149 U. S. 481, 13 Sup. Ct. 950, 37 L. Ed. 819; Roundtree v. Smith, 108 U. S. 269, 2 Sup. Ct. 630,

27 L. Ed. 722; Clews v. Jamieson, 182 U. S. 461, 488, 21 Sup. Ct. 845, 45 L. Ed. 1183. The argument of appellant's counsel to the effect that the terms of the contracts for these December sales were not reduced to writing or disclosed in the record, as well as his argument that the names of the purchasers are not set forth, also that the parties in fact settled such "hedge" contracts by purchasing a like amount of grain for December delivery and making one contract offset the other, instead of producing the actual wheat, is unsound. The evidence shows that the transactions were in accordance with the universal usage and custom of the board of trade, and that the rules of such board require the contracts to be made in the name of the broker without disclosing the principal, and the fact that the broker adjusts the two transactions through the clearing house by offsetting one against the other, instead of going through the formality of making and exacting a delivery of the actual grain, does not show the transaction to be a mere gambling one. The test is, did the parties have the legal right to demand and receive or deliver the actual wheat, or did they contemplate and agree that no actual wheat should be delivered? What the parties may have done, or what they may have contemplated doing in the matter of delivery of actual grain, is not controlling, but, rather, what they believed and contemplated they had a legal right to do under the contract in this regard is the test. Any other rule would greatly hamper the millions of legitimate transactions taking place every week in the business world, and would do away with the great convenience of the clearing houses. The essence of a gambling transaction is that the particular transaction shall contemplate no delivery, without reference to the making of any other deal. If the sales were to be mere bets on the market price, there was no occasion for a counter transaction, but all that would remain to be done would be for the parties to settle according to the price at the time specified in the contract. If an order to sell for future delivery is a gambling deal merely because the seller contemplates that he will later on buy the grain to fill the order, then "hedging" is impossible, and practically every trade on all the boards of trade in the country is illegal. See Ponder v. Jerome Hill Cotton Co., 100 Fed. 373, 40 C. C. A. 416; Clews v. Jamieson, 182 U. S. 461, 494, 21 Sup. Ct. 845, 45 L. Ed. 1183; Barnes v. Smith, 159 Mass. 344, 34 N. E. 403; Board of Trade v. Kinsey et al., 130 Fed. 507-512, 64 C. C. A. 669.

The whole scope of defendant's evidence is an expression of his opinion against objection of counsel, that "hedging" does not contemplate the actual delivery of the grain. Such evidence was insufficient to warrant the submission to the jury of the question whether the transaction was a gambling transaction. It was a mere conclusion of the witness, and is entitled to no weight when considered in the light of his other testimony in the case. It is apparent from defendant's testimony that he does not base his contention that the so-called "hedges" were illegal because they contemplated a mere bet on the market price of the grain, but because the person hedging contemplates that, instead of delivering the grain, he will buy later on the same amount of grain for delivery at such future time and offset one contract against the other. Such a transaction will be legitimate unless the parties both contemplated that no grain should be actually delivered. We find no evidence sufficient to require submission to the jury that such was the contemplation of both parties. As before stated, the fact that one of the parties may intend that, in lieu of a delivery or acceptance of the grain, he may later on make a counter trade and offset the two legal contracts against each other will not operate to invalidate the transaction. Both parties must have understood and agreed that this would be done in lieu of a delivery or acceptance of actual grain. See foregoing authorities. As above stated, the law presumes that these hedging contracts were legal, and also that each order given to plaintiff by defendant to sell these futures was intended to relate to an actual sale, and that actual sales were made, and the burden of proof was therefore upon defendant to establish the contrary. Hill v. Levy (D. C.) 98 Fed. 94; Irwin v. Williar, 110 U. S. 507, 4 Sup. Ct. 160, 28 L. Ed. 225; Boyle v. Henning (C. C.) 121 Fed. 376; Johnston v. Miller (Ark.) 53 S. W. 1052; Ponder v. Jerome Hill Cotton Co., 100 Fed. 373, 40 C. C. A. 416; Bibb v. Allen, 149 U. S. 481, 13 Sup. Ct. 950, 37 L. Ed. 819; Clews v. Jamieson, 182 U. S. 461, 488, 21 Sup. Ct. 845, 45 L. Ed. 1183. Without further discussion of the questions involved, we conclude, that the record discloses no error in directing a verdict for the plaintiff.

The judgment is accordingly affirmed. All concur.

ENGERUD, J., having been of counsel in the court below, took no part in this decision; Judge C. J. FISK, of the First Judicial District, sitting by request.