## HALLET v. AGGERGAARD.

To defeat a broker's action for commissions in the purchase and sale of grain for future delivery, it is necessary to show that neither party had any intention of receiving or delivering the property, and that both understood or agreed that the transaction should be settled by a payment of differences.

The purchase and sale of personal property for future delivery was not rendered illegal by the fact that at the time the contract was made neither party owned or had the property contracted for in his possession, but was required to go into the market to obtain it.

Where a broker purchased wheat for defendant for future delivery, the broker intending to actually deliver, the fact that, in obedience to defendant's instructions and the legally recognized usages of trade, the broker closed the transaction long before the time for delivery had arrived, did not impair his right to recover commissions and advances, unless he in some manner was privy to a wagering contract to speculate on the market.

In an action for broker's commissions, evidence held to sustain a finding that the broker intended an actual delivery of the wheat purchased by him for his customer for future delivery, and not a mere wager on the market.

Where it was stipulated that an offer of a telegraph company, if present, would testify that certain telegrams sent by defendant to plaintiff during 1901 had been destroyed, defendant not having produced such telegrams in response to a notice, plaintiff was entitled to introduce the telegrams received by him ordering to purchase or sell on defendant's account a specified amount of wheat for future delivery, for which plaintiff claimed commissions, etc.

Where defendant ordered a broker doing business on a grain exchange to purchase and sell wheat for him for future delivery, defendant, by failing to give any instructions to the contrary, impliedly authorized the broker to execute the orders in accordance with the established rules and usages of the exchange.

Where a grain broker was ordered to purchase wheat on the exchange for future delivery, it will be presumed, in the absence of evidence to the contrary, that he acted in conformity with the rules and usages of the exchange.

Corson, J., dissenting.

(Opinion filed, January 7, 1908.)

Appeal from Circuit Court, Yankton County.  Hon. E. G. Smith, Judge.

Action by Ferdinand A. Hallet, doing business as Hallet & Co., against Peter N. Aggergaard.  From a judgment for plaintiff, defendant appeals.  Affirmed.

*French & Orvis,* for appellant.  *Gamble, Tripp & Holman* and *Wilson & Mercer,* for respondent.

FULLER, P. J.  At the trial of this action instituted by a member of a Minneapolis Chamber of Commerce to recover his brokerage commissions and money expended in connection with the purchase and sale of wheat on that market on account of and as the agent of the defendant, plaintiff obtained the judgment sought to be reversed on this appeal.

Upon competent evidence received in support of that issue and submitted to the jury by means of a special interrogatory, it was found, in addition to a general verdict for plaintiff, that the transaction was understood by the defendant to be a mere wager on the rise and fall of prices, and that he never intended to receive any grain or do anything more than to make settlement by the

adjustment of the difference between the contract price and the prevailing market price at the time specified for delivery. In substance and effect it was also found in response to another special interrogatory, upon competent evidence submitted therewith to the jury under instructions conformable to the law and easily comprehended, that the plaintiff at the time of the different transactions understood that the purchases and sales consummated pursuant to defendant's orders were bona fide and entered into upon his part with the intention that the grain was to be actually delivered. In support of this important issue formed by the pleadings, it was properly shown that the articles under which the Chamber of Commerce was organized and exists, and the rules under which the business of buying and selling produce on the floor of the exchange is operated, make it an offense punishable by suspension from all privileges, or by actual expulsion by the board of directors, for any member "to make, negotiate in any form, have, or be in any way interested in any 'bucket shop' contract, trade or transaction whatever, or any contract of sale of any personal property whatever, for future delivery, with no intent to make an actual sale or to deliver or receive such property, but with intent to settle or cancel such contract by payment of the difference between the contract and the market price; or to engage in the business of 'bucket shopping' or dealing in differences on the fluctuations in the market price, without actual purchase and sale for delivery of any commodity." The testimony presented by the record shows that some time during the month of July, 1901, plaintiff's bookkeeper or clerk called upon the defendant, who is an extensive farmer, stock grower, and shipper at Irene, S. Dak., for the purpose of soliciting his business should he have any in the grain market, and soon afterward the defendant made certain remittances to plaintiff, and instructed him by wire to buy 50,000 bushels of wheat for December delivery, which was thereupon purchased in the pit, where such business is carried on, according to the customs and usages of the trade. Other similar transactions, including instructions to sell, followed from time to time, and the confirmatory report in each instance transmitted by plaintiff to the defendant in the usual course of business showing that his order

had been executed contains the following cautionary printed matter over the signature of plaintiff: "All transactions made by us for your account contemplate the actual receipt and delivery of the property and payment therefor. On all marginal business, we reserve the right to close transactions when margins are running out, without giving further notice. We also reserve the privilege of substituting other responsible parties as principals with you in above trades, at any time until closed, in accordance with the rules of the exchange where the trades are made, and to clear all transactions through Clearing Association, if there be any, from day to day, in accordance with the usage prevailing at the time. All purchases and sales made by us for you are made in accordance with, and subject to, the rules, regulations, and customs of the Exchange where the trades are made, and the rules, regulations, and requirements of its board of directors, and all amendments that may be made thereto."

By counsel for the defendant plaintiff was cross-examined, and testified in part as follows: "Q. Did you ever have any wheat at all, actual wheat I mean, for Mr. Aggergaard? A. Never had any actual wheat. We had the futures. Q. That was a contract for wheat, wasn't it? A. A contract for future delivery. Q. All of these deals that you made for Mr. Aggergaard were contracts for future delivery, weren't they? A. Yes, sir." As all persons knowingly participating in the execution of a gambling contract are principal offenders, and the dealers with whom the series of transactions were consumated are unknown, their intention is wholly immaterial under the pleadings and proof, and there is nothing to judicially characterize, but the contractual relation, express or implied, existing between the parties to this action. In determining this controlling question, it became necessary for the jury to look beyond mere assertions favorable to either party, and to consider all the facts and circumstances in evidence relative to the mode of dealing between them, and this appears to have been done under instructions by the court that were characteristically lucid and comprehensive. To defeat a recovery in an action of this character, it is only necessary to show to the satisfaction of the jury that neither party to the contract

had any intention of receiving or delivering the property, but both expected to settle the difference between the purchase and the market price at some future time. It is firmly settled law that such transactions constitute nothing more than a wager on the fluctuation of the market, and are therefore absolutely void. Waite v. Frank, 14 S. D. 626, 86 N. W. 645. However, the purchase or sale of personal property for future delivery is not rendered illegal and void by the mere fact that at the time the contract is made neither party owns or has it in his possession, but must go upon the market to obtain the same. Irwin v. Williar, 110 U. S. 499, 4 Sup. Ct. 160, 28 L. Ed. 225. As facts and circumstances tending to negative the claim that future delivery was always contemplated by plaintiff and to overcome the presumption that he had no intention of gambling, it was shown that, in obedience to the orders of defendant, his several remittances amounting to several thousand dollars were used for margins, and that none of the grain was fully paid for or ever delivered. To overcome any inference that might be justified by the failure to pay for or deliver the grain at the time named in the contract of purchase, it was shown by the undisputed evidence that defendant, though a man of considerable wealth and apparently able to conduct large financial operations, · required the respective transactions to be closed by plaintiff long before the specified time for delivery had arrived. Such transactions by a broker in obedience to the instructions of his principal and the legally recognized usages of the trade in no manner impair his right to recover customary commissions and money authoritatively advanced, unless it is shown that he is in some manner privy to a wagering contract to speculate upon the tendency of the market, without any intention to deliver the property; and in that event his entire claim is ipso facto void on the ground of public policy. Harvey v. Merrill, 150 Mass. 1, 22 N. E. 49, 5 L. R. A. 200; Tomblin v. Callen, 69 Iowa, 229, 28 N. W. 573. Ostensibly, as well as presumptively, the various transactions were conducted according to law and the existing rules of the exchange, and plaintiff is absolved from the consequences of defendant's guilty determination to gamble by the special finding of the jury to the effect that he did not intend to deal other-

wise than for future delivery, and never understood that "said purchases and sales were mere wagers upon the rise and fall in the market price of said wheat." This finding is amply sustained by competent evidence, and its conclusiveness as a valid defense and complete answer to the contention of counsel for defendant is shown by the following cases: Jamieson v. Wallace, 167 Ill. 388, 47 N. E. 762, 59 Am. St. Rep. 302; Parker & Co. v. Moore (C. C.) 125 Fed. 807; Bibb v. Allen, 149 U. S. 481, 13 Sup. Ct. 950; Ponder v. Cotton Co., 100 Fed. 373, 40 C. C. A. 416; Barnes v. Smith, 159 Mass, 344, 34 N. E. 403; Clews v. Jamieson, 182 U. S. 461, 21 Sup. Ct. 485, 45 L. Ed. 1183; Clay v. Allen, 63 Miss. 426.

It appears from the record that plaintiff served ample and timely notice on the defendant to produce at the trial all letters, telegrams, statements of account, and reports of purchases and sales received by him from plaintiff pertaining to the various transactions set forth in the complaint, and, to avoid the necesity of taking the deposition of the superintendent of the Western Union Telegraph Company, it was stipulated before the trial commenced that, if present, that officer would testify that telegrams delivered to his company for transmission during the year 1901 had been destroyed. In view of the foregoing stipulation and the notice which was not complied with, it was not erroneous to overrule an objection to plaintiff's offer to introduce in evidence certain telegrams ordering him to purchase or sell on the defendant's account a specified amount of wheat for future delivery. As a supplement to the foundation thus laid for the introduction of secondary evidence, it was shown that these telegrams addressed to plaintiff and purporting to have been signed and sent by the defendant from Irene, South Dakota, were duly delivered on the floor of the Minneapolis exchange by a representative of the Western Union Telegraph Company, and that plaintiff immediately transacted the business just as directed, and reported the fact to defendant. Plaintiff had also testified that as a member of the Chamber of Commerce, he was engaged in buying and selling grain for others on commission, and that he had conducted several transactions of that character for the defendant during the year 1901.

Moreover, the payment of the money sought to be recovered by this action is not resisted on the ground that the contracts for the various purchases and sales described in the complaint were never entered into between the parties, but for the reason, as alleged in the answer, "that all said transactions were and are void and against public policy, and contrary to law." Under the circumstances, and without further preliminary proof, it was entirely proper to admit in evidence the telegrams thus received from the company and acted upon by plaintiff for the defendant, who fully acquiesced in all that was done. 27 Am. & Eng. Enc. of Law, 1088, and cases there collated.

After the introduction of unchallenged evidence to the effect that plaintiff was and for nearly seven years had been constantly engaged in buying and selling wheat on commission in conformity with the rules and regulations of the Chamber of Commerce, of which he was a member, and that immediately upon receipt of defendant's telegraphic order of August 14, 1901, to buy 50,000 bushels of wheat for December delivery, he went from the floor of the exchange to the pit, where all such business is transacted, and executed such order in a manner fully detailed, he was interrogated as follows: "Q. Now, you may explain to the court and jury it the method that you have described in this case is the method pursued and was at that time by members of the Chamber of Commerce in buying and selling grain for future delivery. This question is objected to as leading and calling for conclusion and for the further reason that, whatever may be the custom or method of business of the Board of Exchange or Chamber of Commerce, it is not binding on this defendant at all, until it is shown that he had knowledge of it. The objection is overruled. The defendant excepts. A. It is." Now, by failing to give any instructions to the contrary, defendant impliedly authorized plaintiff to buy and sell wheat for future delivery in accordance with the established rules and usages of the trade at the place where the business was to be transacted; and without any testimony relative to the point the presumption would prevail that he acted in conformity with such rules and usages just as all other brokers are required to do in the execution of similar orders.

Bibb v. Allen, 149 U. S. 481, 13 Sup. Ct. 950, 37 L. Ed. 819. By the mere act of dealing on the exchange he authorized his broker to conform to its reasonable and legally established methods, and his ignorance thereof is wholly immaterial in the absence of evidence showing that the governing rules, usages, and customs of the trade are unlawful or against public policy. Taylor v. Bailey, 169 Ill. 181, 48 N. E. 200; Van Dusen v. Jungeblut, 75 Minn. 298, 77 N. W. 970, 74 Am. St. Rep. 463; Whitehouse v. Moore, 13 Abb. Prac. (N. Y.) 142; 26 Am. & Eng. Enc. of Law, 1067. To establish the defense alleged in the answer, the burden was upon defendant to prove by a preponderance of evidence and to the satisfaction of the jury that through the agency of plaintiff's clerk, or by some other means, there was an understanding between the parties to this action that the various transactions upon the market were but wagers upon the rise and fall of prices, without intention of receiving or delivering the wheat. Miller Co. v. Klovstad, 14 N. D. 435, 105 N. W. 164; Hill v. Levy (D. C.) 98 Fed. 94; Pixley v. Boynton, 79 Ill. 351; Roundtree v. Smith, 108 U. S. 269, 2 Sup. Ct. 630.

With reference to that important issue, the facts and circumstances were such as to require the submission of the case to the jury, and the motion to direct a verdict in favor of the defendant was therefore properly overruled. Our view of the law, as herein expressed, is decisive of every point urged for a reversal, and a careful examination of the entire record discloses no error, either in the admission or rejection of evidence or in the court's charge to the jury. The judgment appealed from is affirmed.

CORSON, J., dissenting.