GILT EDGE TEXTILE CORPORATION, FORMERLY GILT EDGE SILK MILLS OF NEW JERSEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10447.    Promulgated September 30, 1947.

*William Surosky, Esq.,* for the petitioner.
*John E. Mahoney, Esq.,* for the respondent.

OPINION.

ARUNDELL, *Judge*: Respondent disallowed the claimed deduction of $30,000 on the ground that it was a payment made to satisfy a personal liability of Philip Dimond. It appears from the evidence before us, however, that the item in question originated as an interest-bearing loan from petitioner to the estate of Louis Spitz in 1929. Philip Dimond, petitioner's president, was also a coexecutor of the estate. In 1931, when it appeared that the estate was having financial difficulties, Dimond, acting in petitioner's behalf, sought to obtain repayment of the loan from the estate to petitioner by arranging for the petitioner to purchase from the estate certain shares of stock in Quebest Investing Co. Although separate checks were exchanged, the net effect of the transaction was that petitioner took credit upon the purchase price of the stock for the debt owing to it from the estate and paid the estate the cash difference. Later, in the suit brought against Dimond by the heirs and legatees of Louis Spitz and the other executors of the Spitz estate, it was alleged that the $30,000 payment constituted a preference. The final decree of the chancery court entered pursuant to a stipulation of the parties in settlement of the suit ordered Dimond, among other things, to repay or cause to be paid in cash the $30,000 by way of return to the estate of Louis Spitz. Petitioner thereupon issued its check to Dimond in that amount and he in turn endorsed it to the estate. Dimond paid the remaining $70,000 called for by the decree in connection with the second, third, and fourth causes of action.

In view of these circumstances, we think respondent's disallowance of the deduction of $30,000 claimed by petitioner was improper. Two of the complainants in the suit were contending that they were preferred creditors of the estate. If all the facts alleged in the complaint could be proved, it may well be that petitioner, as the recipient of a preferential payment, could have been legally compelled to make

direct restitution to the estate. It may also be that other liabilities could have been asserted directly against the petitioner, based on its transactions with the estate. Apparently, petitioner considered that its risks of incurring losses were substantial, because it retained separate counsel and paid him a $5,000 fee to represent its interests in the outcome of the litigation.

But whether petitioner could have been proceeded against directly and compelled to return the money to the estate is not, we think, controlling of the right to the deduction. Petitioner contends that it was legally obligated to reimburse Dimond for his loss when it later developed that he was answerable to the estate for the money he had collected for petitioner's benefit. There appears to be considerable merit in the contention, for, under the general principles of the law of agency, an agent is entitled to reimbursement from his principal for expenses and losses incurred in the course of the principal's business and to indemnity from liability to third parties arising from the agent's acts where the principal has received the benefit of such acts. See *Bibb* v. *Allen*, 149 U. S. 481, 498; *Admiral Oriental Line* v. *United States*, 86 Fed. (2d) 201, 202; *Irving Trust Co.* v. *Townsend*, 1 Fed. Supp. 837; Restatement Agency, § 439; C. J. S., Agency, §§ 196, 197. Dimond was no less petitioner's agent in arranging for the collection of petitioner's debt merely because the same act, in his other capacity as executor, formed the basis of one of the liabilities asserted against him in the suit. And petitioner received the benefit of that act.

Nevertheless, we need not rest our decision on a holding that petitioner, as principal, was legally liable to indemnify Dimond, as its agent. We have said before that even a moral obligation arising out of a business transaction will suffice to support a loss deduction. *Herschel V. Jones*, 1 B. T. A. 1226; *Abraham Greenspon*, 8 T. C. 431. The petitioner here was no mere volunteer. In equity and good conscience it was obliged to satisfy that part of the decree against Dimond calling for the repayment of the $30,000 to the estate. After making the payment, there was no possibility for petitioner to recover any part of it from the estate or the heirs, because, in exchange for releases from all the complainants, petitioner executed cross releases to them.

The payment in the taxable year marked the ultimate conclusion of the transaction entered into in 1929 and fixed the petitioner's loss. We think it fully qualifies for deduction as a loss under section 23 (f) of the code, and we so hold.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

HILL *J.*, dissenting: It is my opinion that the record in this case discloses neither a legal nor a moral obligation on the part of petitioner to release its claim for debt against the Spitz estate.

If it be assumed that petitioner was either legally or morally obligated to refund the $30,000 paid to it in 1931 in full settlement of its debt against the Spitz estate because such payment was improperly preferential to it as a general creditor, petitioner by such refundment was restored to its former status of a general creditor of the Spitz estate. As a general creditor, it had the legal right to payment of its debt proportionately with other general creditors out of assets of the estate available for payment to general creditors. It does not appear that there were no such assets. In fact, the contrary is indicated. After such refundment was made by petitioner, neither the Spitz estate nor the creditors thereof, nor the heirs of Louis Spitz, deceased, had any claim or claims whatever against petitioner. The general releases by petitioner of claims against the above named parties were executed solely for the purpose of enabling Dimond, petitioner's president, treasurer, and controlling stockholder, to settle on a compromise basis for $100,000 actions for damages against him in the claimed aggregate amount of more than $2,000,000 for alleged negligence and mismanagement as executor of the Spitz estate.

The pending action against Dimond did not involve any alleged liability of the petitioner to the complainants therein. Petitioner was not a party to the action and there is nothing in the record to indicate any obligation or duty, legal or moral, on the part of petitioner either to Dimond or to the complainants in the action to execute such releases. It does not appear that it was within the scope of petitioner's business to contribute to the payment or settlement of Dimond's obligations, nor does it appear that such contribution was a nonbusiness transaction entered into for profit.

It does not appear that petitioner was to be reimbursed by Dimond for releasing its claim of debt against the Spitz estate. · If, however, a claim for such reimbursement did arise out of the transaction, there is no showing that Dimond was not financially able to discharge such obligation.

Therefore, as I see it, under the facts of the case and the law applicable thereto, petitioner is not entitled either to the deduction claimed for a business or nonbusiness loss or to a deduction for bad debt.

TURNER, DISNEY, KERN, and OPPER, *JJ.*, agree with this dissent.